**UNITED STATES of America ex rel. Thomas STEWART, Petitioner,**

v.

**William J. SCOTT, Attorney General of the State of Illinois, Richard Elrod, Sheriff of Cook County, and Hon. Richard Fitzgerald, Chief Judge, Criminal Division, Circuit Court of Cook County, Illinois, Respondents.**

No. 79 C 1829.

United States District Court,
N. D. Illinois, E. D.

Sept. 8, 1980.

Shelly Waxman & Associates, Robert K. Mayer, Chicago, Ill., for petitioner.

Thomas E. Holum, Timothy B. Newitt, Asst. Attys. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

The petitioner, Thomas Stewart, seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging the constitutionality of his conviction in the Circuit Court of Cook County. Respondents have moved for summary judgment. Petitioner requests an evidentiary hearing or, alternatively, summary judgment in his favor.

Stewart was tried and convicted on two counts of armed robbery by a jury and sentenced to two to eight years in custody. He appealed his conviction to the Illinois Appellate Court which affirmed. *People v. Stewart*, 24 Ill.App.3d 605, 321 N.E.2d 450 (1974). The Illinois Supreme Court denied

leave to appeal, 58 Ill.2d 595 (1975). Stewart then filed a petition for post judgment relief. The trial court denied the petition and the Illinois Appellate Court again affirmed. *People v. Stewart*, 66 Ill.App.3d 342, 23 Ill.Dec. 152, 383 N.E.2d 1179 (1978). Apparently because of some clerical error, a timely appeal was not taken and the Illinois Supreme Court refused to extend time to file a Petition for Leave to Appeal. The United States Supreme Court denied certiorari. *Stewart v. Illinois*, 441 U.S. 907, 99 S.Ct. 1998, 60 L.Ed.2d 376 (1979).

Stewart then filed his habeas corpus petition in this Court. He charges that his retained attorney acted in a duplicitous role depriving him of effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights.[1] The charge is based on the facts that S. Thomas Sutton, Stewart's attorney, also represented his codefendant, Stephan Sedlacko, and that Sutton himself planned the robbery for which Stewart was convicted.

At trial neither Stewart, the state's attorney nor the court inquired about any potential conflicts. Similarly, on appeal, although Stewart retained new counsel who presented challenges to the adequacy of representation, none of them related to Sutton's dual representation or his own involvement in the robbery. However, at the post–conviction hearing much evidence was adduced on those charges.

The evidence at that hearing established that Sutton was the leader and Stewart and Sedlacko were members of an organization called the Legion of Justice. The Legion's function was to gather intelligence information about certain "left–wing" activities. The robbery for which Stewart was convicted was one of a number of robberies and break–ins planned and executed by the Legion, its leader and members.

Sutton personally designated the Legion members who were to commit the robbery. Two of them were Sedlacko and a Tom Kominsky, whose physical characteristics were similar to Stewart's.

Sutton did not call Kominsky as a witness at trial, nor did he disclose his identity to the jury. Moreover, he purposely insured Sedlacko's absence from trial by instructing him to leave the jurisdiction and furnishing him with $2,000.00 and two sets of identification. Sutton also advised Stewart not to testify in his own behalf and ordered Stewart's brother to deny any knowledge about the Legion and Stewart's association with Sedlacko even though he knew those facts were false.

After hearing this evidence the state's attorney confessed error on the ground that Stewart was denied effective assistance of counsel. The trial court, however, determined that it was not bound by the confession of error, and the appellate court affirmed, holding that since Stewart knew the full extent of Sutton's participation in the robbery at the time the conviction was appealed, had retained new counsel and still did not raise the issue of conflict, he waived his right to challenge the adequacy of representation. *People v. Stewart*, 66 Ill. App.3d 342, 352–53, 23 Ill.Dec. 152, 160–161, 383 N.E.2d 1179, 1187–88 (1978).

A recent decision of the United States Supreme Court provides substantial guidance in resolving the issues presented here. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court held that a person who did not raise an objection to the adequacy of representation at trial was entitled to habeas corpus relief under 28 U.S.C. § 2254 for violation of his Sixth Amendment rights if he could establish "that an actual conflict of interest adversely affected his lawyer's performance". 100 S.Ct. 1708 at 1718. In reaching its decision the Court concluded that a district court reviewing a habeas corpus petition is not bound by a state court's finding that an attorney engaged in multiple representation since that determination is a mixed question of law and fact. In addition, the Court concluded that even though counsel was

---

1. In addition, Stewart challenges certain defects in his post–conviction hearing and in the related appeal. Since the Court concludes that

Stewart was denied fundamental constitutional rights at trial, entitling him to the relief requested, those issues need not be addressed.

**56**

privately retained, not appointed, the requisite state action was established.

In this case, facts such as Sutton's activities in the Legion of Justice, his participation in planning the robbery, his instructions to Stewart's brother to falsely testify about his familiarity with the Legion and its members and his order to Sedlacko to leave the jurisdiction are "historical facts" which must be presumed correct. 28 U.S.C. § 2254(d). *See Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n.6, 9 L.Ed.2d 770 (1963).

■ Neither the trial court nor the appellate court rejected these facts. Their findings merely involve the resolution of legal issues such as whether Stewart had waived his right to object to the representation and whether the representation was inadequate. Because these are legal findings or mixed questions of law and fact requiring "the application of legal principles to the historical facts," *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980), this Court is not bound by those conclusions and may make an independent evaluation of Stewart's constitutional arguments.

■ The presence or absence of state action does not turn on the distinction between retained and appointed counsel. Rather, state action is predicated on the fact that the state itself initiates and conducts the trial. *Cuyler v. Sullivan,* 446 U.S. 335, 343–345, 100 S.Ct. 1708, 1715–16, 64 L.Ed.2d 333 (1980).

In this case, the involvement of the state is somewhat greater. In *Cuyler* there was no suggestion that state officials knew or should have known of defense counsel's conflict. In contrast, although the state's attorney apparently was unaware of potential conflicts at the time of trial, he made a confession of error which constitutes state participation in a stage of the proceeding when constitutional defects could have been rectified. Thus, the state action requirement is unequivocally satisfied. Stewart may challenge the constitutionality of his conviction under 28 U.S.C. § 2254 even though he retained private counsel.

*Cuyler* also provides a standard for determining when a violation of the Sixth Amendment has occurred. A petitioner seeking a writ of habeas corpus must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

■ The undisputed facts demonstrate an actual conflict in Sutton's representation both because of his interest in protecting himself and the Legion from implication in the robbery and his dual representation of Sedlacko.

Sutton was not only the leader of the Legion of Justice, but actively planned the robbery and selected members to execute it. One of those persons, Ted Kominsky, bore a strong physical resemblance to Stewart. Much of the evidence at trial focused on the identity of the robber, and the victims had made two prior photographic identifications. *See People v. Stewart,* 24 Ill.App.3d 605, 321 N.E.2d 450 (1974). Although Kominsky could have substantially discredited the identification testimony, Sutton did not call him to testify and never made the court or the jury aware of his existence.

Another participant was Stewart's co–defendant Sedlacko. Sutton assured Stewart that he would be acquitted of the criminal charges because Sedlacko would testify at trial that Stewart was not present at the scene of the robbery. Sutton not only failed to procure Sedlacko's testimony, but supplied money and identification to facilitate his departure from the jurisdiction.

A further indication of Sutton's conflict of interest was his failure to vigorously pursue Stewart's alibi defense. In addition to not calling as witnesses Kominsky and Sedlacko, Sutton instructed Stewart's brother to perjure himself by denying knowledge of any association between Stewart and Sedlacko. Moreover, although it is not precisely established on this record, it appears that Sutton failed to cross–examine a Chicago Police officer, called by the State as a rebuttal witness, who knew that

Stewart did not accompany Sedlacko on the night of the robbery.

Sutton's dual role as counsel for Stewart and Sedlacko also evidences an actual conflict of interest. When Sutton advised Sedlacko to leave the jurisdiction, he told Sedlacko that he expected Stewart would be acquitted and that the acquittal would benefit Sedlacko at his trial. By so doing, Sutton demonstrated divided loyalties destined to diminish the effectiveness of representation at Stewart's trial. *See Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464–465, 86 L.Ed. 680 (1942); *United States v. Jeffers*, 520 F.2d 1256, 1263 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).

Respondents do not directly oppose Stewart's contention that he was denied effective assistance of counsel. Rather, their argument is that because Stewart knew of Sutton's participation in the robbery and the Legion of Justice, he waived any right to challenge the effectiveness of the representation.

However, the cases upon which respondents rely are inapposite, for unlike here, in most of them an actual conflict was not found. *Kaplan v. Bombard*, 573 F.2d 708 (2d Cir. 1978); *United States v. Kidding*, 560 F.2d 1303 (7th Cir.), *cert. denied sub nom. Brown v. United States*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977); *United States ex rel. Robinson v. Housewright*, 525 F.2d 988 (7th Cir. 1975); *United States v. Frame*, 454 F.2d 1136 (9th Cir.), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed.2d 126 (1972); *Roberts v. United States*, 348 F.Supp. 563 (E.D.Mo.1972), *aff'd*, 477 F.2d 544 (8th Cir. 1973). Moreover, none of them presented such an egregious conflict as affected Sutton's performance. In those cases, although the attorneys represented co–defendants, there is no indication that their representation was hampered by a desire to exculpate themselves.

In *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976) and *United States v. Sheiner*, 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969), the issue of waiver was squarely before the courts. However, in each of those cases, the possibility of conflict was disclosed to the trial court and the defendant was given the opportunity to remedy potential prejudice.

■ Whether Stewart waived his rights is a matter of law which must be determined by applying federal constitutional standards to historical facts. *Brewer v. Williams*, 430 U.S. 387, 403–404, 97 S.Ct. 1232, 1241–1242, 51 L.Ed.2d 424 (1977). The court must draw every reasonable presumption against waiver of fundamental rights, *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464–465, 86 L.Ed. 680 (1942), and the state must prove "an intentional relinquishment or abandonment of a known right or privilege." *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ The trial court was not apprised of the conflict of interests until the post–conviction hearing. It was, therefore, unable to instruct Stewart about the potential prejudice resulting from the conflicts of interest. *Glasser v. United States*, 315 U.S. 60, 71, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); *United States v. Gaines*, 529 F.2d 1038, 1044 (7th Cir. 1976). In addition, Stewart was not aware that Sedlacko, upon Sutton's instruction, would not appear at trial. Indeed, he was advised that Sedlacko would testify and that Sedlacko's testimony would vindicate him. It is likely that had Stewart known of Sutton's role assuring Sedlacko's absence, he would have re–evaluated his choice of counsel. Under these circumstances, even if Stewart did forego objections to the adequacy of counsel, his decision to do so was not "deliberate and made with an understanding of the conflicting interests and the dangers resulting from them." *United States v. Gaines*, 529 F.2d 1038, 1043 (7th Cir. 1976).

The material facts are not in dispute. Sutton was presented with actual conflicts of interest which affected his representa-

58

tion of Stewart and Stewart did not knowingly waive his constitutional rights. Accordingly, respondent's motion for summary judgment is denied. Petitioner's motion for summary judgment and his request for a writ of habeas corpus are granted.