**STATE of Missouri, Respondent,**

v.

**Darrell CHANDLER, Jr., Appellant.**

No. 62247.

Supreme Court of Missouri,
En Banc.

Oct. 16, 1985.
Rehearing Denied Nov. 21, 1985.

Richard S. Brownlee III, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Christine M. Szaj, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

The jury convicted defendant of capital murder, § 559.005 RSMo Supp.1975 (transferred to § 565.001 RSMo 1978; repealed L.1983; currently § 565.020 RSMo Supp. 1984), for his role in the August 2, 1976, murder of attorney Joseph Langworthy in Pacific, Missouri. Prior to the time of trial, defendant's brother, Richard Chandler, in a separate proceeding had been convicted of capital murder for his involvement in the Langworthy murder.[1] Another brother, Michael Chandler, testifying for the prosecution at defendant's trial, stated that he stood watch at Langworthy's office door while his brothers Darrell and Richard killed the victim. Richard Chandler had testified before a Grand Jury that attorney J.L. Anding had hired him to murder Langworthy and prior to defendant's trial, Anding had been indicted for murder in the Langworthy killing. In this connection Anding was represented by Dan O'Brien, who with Anding represented defendant in the case sub judice. Although at the time of defendant's trial the charges against Anding had been dismissed, he was later recharged and we learned from oral argument that the charge is currently pending.

Upon conviction defendant was sentenced to life imprisonment without eligibility for probation or parole for fifty years. In the appeal to this Court[2] the cause was assigned to Division II and during oral argument the submission was set aside when the Court perceived "possible conflicts in counsel's representation of appellant." The Court thereupon appointed attorney Richard Brownlee to represent defendant and subsequently ordered the hearing on appeal "continued" pending further proceedings in the trial court. The order, entered November 25, 1981, is as follows:

The Court itself having initiated the inquiry into the effectiveness of counsel and possible conflicts in counsel's representation of appellant, the hearing on appeal is ordered continued, the rules are waived and appellant given leave to file and have evidentiary hearing pursuant to Rule 27.26 prior to final disposition of the appeal. If counsel desires, the transcript of the grand jury testimony of Darrell Chandler, Jr., or copy thereof taken on October 6, 1978, before the grand jurors for the State of Missouri, September Term, 1978, Franklin County relative Joseph Langworthy, deceased and the official records or copy thereof in the case of *State of Missouri v. J.L. Anding*, No.____ Circuit Court Franklin County, Missouri, shall be made available for use in said 27.26 hearing. The 27.26 hearing is ordered expedited and the appeal, if any, ordered consolidated with this appeal. All other matters contained in the motions filed November 23, 1981, ordered taken with the case on hearing.[3]

Pursuant to that order a proceeding under Rule 27.26 was commenced and after evidentiary hearing, the circuit court, Judge Stanley A. Grimm presiding, found that defendant had not been denied effec-

---

1. Subsequent to defendant's conviction, Richard Chandler's conviction was affirmed by this Court. *State v. Chandler*, 605 S.W.2d 100 (Mo. banc 1980).

2. At the time this cause was appealed this Court had exclusive appellate jurisdiction in all cases where the punishment imposed was death or imprisonment for life. Mo. Const. art. V, § 3.

Therefore we retain the appeal though Article V, § 3, as amended in 1982, no longer grants us exclusive appellate jurisdiction where the punishment imposed is life imprisonment.

3. By order of December 11, 1981, the order was corrected to make reference to Grand Jury testimony of Richard Chandler.

tive assistance of counsel at trial but had been denied effective assistance of counsel on appeal. Setting aside allocution, sentence and judgment, Judge Grimm ordered that defendant be granted allocution and that the trial court again enter sentence and judgment. Thereafter the Honorable A.J. Seier,[4] Circuit Court of Cape Girardeau County, resentenced defendant to life imprisonment without eligibility for probation or parole for fifty years. We now consolidate defendant's direct appeal with that from the Rule 27.26 hearing.

It is contended: (1) defendant received ineffective assistance of trial counsel in violation of his Sixth and Fourteenth Amendment rights, because of his attorneys' conflict of interest and their violation of ethical canons, (2) the trial court erred by stating to the jury that they should be finished "today," and (3) the trial court improperly responded to the jury's request for Grand Jury transcripts.

■ It is defendant's claim of ineffective assistance of counsel which we find dispositive of this appeal. The unique facts presented here are so bizarre we cannot place our imprimatur on the conviction. The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants receive a fair trial. *Strickland v. Washington,* 466 U.S. 668, ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). Counsel's conduct was not such as "to justify the law's presumption that [they fulfilled] the role in the adversary process that the [Sixth] Amendment envisions." *Strickland,* 104 S.Ct. at 2065.

Defendant was co-represented by attorney, Anding, who had been implicated in the murder for which defendant stood trial.

With Anding was attorney, O'Brien, who also represented Anding on his murder charge. Anding paid O'Brien to represent him as well as defendant.[5]

Michael Chandler testified as a primary witness for the prosecution at defendant's trial. In statements to the police Michael had linked his brothers to the Langworthy murder, at which time he apparently was also represented by Anding.[6]

Defendant's counsel (O'Brien and Anding) decided against calling Richard Chandler as a witness in defendant's trial. As previously noted it was Richard who initially had tied Anding to the Langworthy murder. Richard had discharged Anding from his representation on the murder charge and gave a videotaped statement to the police asserting that Anding had hired him to murder Langworthy. Richard later testified to similar facts before a Grand Jury. *See State v. Chandler,* 605 S.W.2d 100 (Mo. banc 1980). By the time of defendant's trial, Anding knew of Richard's testimony. At his 27.26 evidentiary hearing, defendant testified that he had asked Anding to call Richard as a witness. Richard, by deposition taken in connection with defendant's 27.26 proceeding, testified that he also had wanted to testify at defendant's trial, and that he would have testified that he murdered Langworthy, that Anding hired him to do it, and that defendant had nothing to do with the murder. In the Rule 27.26 hearing, Anding testified that he and O'Brien had decided against calling Richard because of his manifest lack of credibility, demonstrated during the outlandish press conference in which he stated that he had killed Jimmy Hoffa and Jerry Litton.[7]

---

**4.** Judge Seier had presided at defendant's original trial.

**5.** On his own charge, Anding retained O'Brien, paying him with a note secured by deed of trust which remained unpaid at the time defendant was tried.

**6.** At defendant's trial the prosecutor asked Michael whether Anding had told him to tell the authorities the truth. The trial court sustained

defendant's objection to this question. Nonetheless, defendant asserts on appeal that the question itself implied that Michael's testimony was true, and that it constituted another prejudicial effect of counsel's conflict of interest.

**7.** Richard's attorney Hale Brown apparently attended the press conference and represented Richard in the Langworthy case after Richard discharged Anding. It appears that Brown too was paid to represent Richard by Anding. By

It must be said from these facts a conflict of interest existed in counsel's representation of defendant.[8] *See United States ex rel. Stewart v. Scott,* 501 F.Supp. 53 (N.D.Ill.1980) (conflict of interest where defendant's attorney planned the crime and represented a co-defendant). In addition, it is clear defendant did not waive his right to the assistance of an attorney unhindered by a conflict of interest. *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978). Under the extraordinary circumstances here the State has failed to prove that defendant intentionally relinquished or abandoned his right to effective assistance of counsel. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *quoted in Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). A reasonable attorney, acting under "prevailing professional norms," would have disclosed the potential conflicts of interest in this case both to the trial judge and to defendant.[9] Anding, acting reasonably, should have fully disclosed that he had been charged with the Langworthy murder, that the charge had been dismissed, that O'Brien had represented him on the charge, and that it was Richard Chandler, a potential alibi witness, who had implicated him in the murder. He also should have fully disclosed his prior attorney-client relationships with Richard and Michael Chandler, and that he was paying O'Brien to co-represent defendant. O'Brien, acting reasonably, should have fully disclosed that he had represented Anding on his murder charge. Upon full disclosure, the trial judge could have determined whether defendant had waived his right to the assistance of an attorney unhindered by a conflict of interest. *Holloway,* 435 U.S. at 483 n. 5, 98 S.Ct. at 1178 n. 5. It was not enough that defendant knew that Richard had implicated Anding in the murder, that Anding had been charged, and that O'Brien had represented Anding. The evidence does not justify a finding that defendant had been fully informed of, or that he understood, the potential for prejudice abiding in these facts. Under these exceptional facts we hold that there was no deliberate waiver of defendant's rights "made with an understanding of the conflicting interests and the dangers resulting from them." *United States v. Gaines,* 529 F.2d 1038, 1043 (7th Cir.1976). *See also United States ex rel. Stewart,* 501 F.Supp. at 57.

his deposition taken in connection with defendant's 27.26 hearing, Richard testified that Brown asked him to hold the press conference because Anding thought it would be a good idea.

**8.** *See generally* Rule 4 DR 5–101, DR 5–105, and DR 5–107.

DR 5–101 states, in pertinent part:

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

\* \* \* \* \* \*

DR 5–105 states, in pertinent part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

\* \* \* \* \* \*

DR 5–107 states, in pertinent part:

(A) Except with the consent of his client after full disclosure, a lawyer shall not:

(1) Accept compensation for his legal services from one other than his client.

(2) Accept from one other than his client anything of value related to his representation of or his employment by his client.

(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.

\* \* \* \* \* \*

**9.** *See supra* note 8.

Defendant asserts that the conflicts present in this case deprived him of effective assistance of counsel as guaranteed by the Sixth Amendment made applicable to the states through the Fourteenth Amendment. *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14 (1970).

General standards for measuring a claim of ineffective assistance of counsel are described in *Strickland,* 104 S.Ct. 2052, where it is stated:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 2064. *See also Seales v. State,* 580 S.W.2d 733, 735 (Mo. banc 1979)[10]

More particularly, the standard to be applied to an ineffective assistance claim founded upon counsel's alleged *conflict of interest* is found in *Cuyler,* 446 U.S. 335, 100 S.Ct. 1708, *cited in Strickland,* 104 S.Ct. 2052, where it is stated that absent an objection at trial, defendant must show "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718. *See State v. Murphy,* 693 S.W.2d 255 (Mo. App.1985).

■ As discussed above, defendant has shown an actual conflict[11] and this showing that "counsel actively represented conflicting interests" establishes the constitutional predicate for defendant's claim. *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

■ We next examine whether defendant has shown that this actual conflict of interest adversely affected his lawyers' performance. In this regard we find it unnecessary for defendant to show that the failure to call Richard, or the doing of or the failure to do something else, was an improper tactical decision. It suffices here for defendant to show that the actual conflict affected his lawyers' ability to exercise independent judgment in their representation of defendant. In light of the egregious conflict of interest present here, it can only be concluded that there could not

10. In *Seales,* this Court held that a defendant claiming ineffective assistance of counsel is required to show that counsel's performance did not conform "to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances," and that defendant was prejudiced thereby. *Seales v. State,* 580 S.W.2d 733, 735 (Mo. banc 1979) (citing *Reynolds v. Mabry,* 574 F.2d 978 (8th Cir.1978), and *Witham v. Mabry,* 596 F.2d 293 (8th Cir.1979)). In *Strickland,* the Supreme Court held that defendant must show that counsel's performance was not "reasonably effective assistance," and that defendant was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). We discern no significant difference between these two tests.

11. Justice Marshall, concurring in part and dissenting in part in *Cuyler,* offers a useful definition of an actual conflict of interest. "There is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." *Cuyler v. Sullivan,* 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 1714 n. 3, 64 L.Ed.2d 333 (1980) (Marshall, J., concurring in part and dissenting in part). We have set forth the potential conflicts present in this case in our above rendition of the facts. It suffices to note that there was an actual conflict at least in that defendant was represented by a co-suspect, Anding, and co-suspect's attorney, O'Brien. It also suffices to note that defendant's and Anding's interests diverged at least when Anding and O'Brien were faced with the decision of whether to call Richard Chandler, who could testify that defendant was not involved but that Anding was. While Judge Grimm correctly found that Anding's participation at the trial itself was minimal, he also correctly found that at trial defendant was represented by Anding as well as O'Brien. Anding's pre-trial participation was substantial. Additionally, Anding participated in the decision not to call Richard as a witness. Thus the fact that Anding was not lead attorney at defendant's trial does not erase the showing of actual conflict of interest.

have been the necessary independent exercise of judgment, and that the existing conflict adversely affected their performance. By this showing "that a conflict of interest actually affected the adequacy of his representation," no demonstration of prejudice is required. *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19. *See also Strickland*, 104 S.Ct. at 2067. However under the facts here we conclude that defendant's trial was prejudiced as a matter of law.

Because defendant has made the necessary showing under *Cuyler*, his conviction must be set aside. Defendant was deprived of "reasonably effective assistance" of counsel. *Strickland*, 104 S.Ct. at 2064. It was not "reasonable" under "prevailing professional norms" for Anding to represent defendant, and most certainly not without defendant's consent after full disclosure.

The Supreme Court in *Strickland* teaches us that "the ultimate focus of inquiry [in adjudicating a claim of actual ineffectiveness of counsel] must be on the fundamental fairness of the proceeding whose result is being challenged." Id. at 2069. The result of defendant's trial "is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results," id., and we can only conclude that defendant was deprived of his constitutional right to effective counsel and that Judge Grimm's contrary finding is clearly erroneous. Rule 27.26(j).

The cause is reversed and remanded to the trial court with directions to vacate the sentence and judgment and for further proceedings thereon.[12]

HIGGINS, C.J., BILLINGS, BLACKMAR, DONNELLY, WELLIVER, JJ. and REINHARD, Special Judge, concur.

ROBERTSON, J., not sitting.

12. We need not address defendant's additional two points on appeal as it is unlikely that they will arise on retrial.