### Benjamin Clifford MILLICAN, Appellant,

v.

### STATE of Missouri, Respondent.

Missouri Court of Appeals,
Southern District,
Division One.

July 20, 1987.

Elizabeth A. Bock, Asst. Public Defender, Springfield, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Benjamin Clifford Millican ("movant") appeals from an order denying his motion per Rule 27.26 [1] to vacate his conviction of the class C felony of stealing a diamond valued at more than $150, § 570.030, RSMo 1978, for which he was sentenced as a persistent offender, § 558.016, RSMo Cum. Supp.1981, to 12 years' imprisonment. The conviction, a result of trial by jury, was affirmed on direct appeal. *State v. Millican*, 641 S.W.2d 144 (Mo.App.1982).

In separate trials, two other individuals, Donald Ray James and Shirley D. James, were convicted for their participation in the theft. The conviction of Donald Ray James was affirmed on direct appeal, number 12353, by order of this Court June 24, 1982. Thereafter, a motion by Donald Ray James to vacate his conviction was denied, and the denial was affirmed on appeal. *James v. State*, 694 S.W.2d 890 (Mo.App.1985).

---

**1.** Rule references are to Missouri Rules of Court (17th ed. 1986).

The conviction of Shirley D. James was affirmed on direct appeal. *State v. James,* 641 S.W.2d 146 (Mo.App.1982).

Movant was represented at trial by retained attorney W——, who also represented the Jameses at their respective trials. As explained more fully *infra,* movant maintains that prior to his trial, a conflict developed between his interest and that of the Jameses, and that the conflict adversely affected W——'s representation of movant. Movant asserts he did not learn of the conflict until 1985, some four years after his trial.

The evidence on which movant was convicted is summarized in *Millican,* 641 S.W.2d 144, and *James,* 641 S.W.2d 146, and we need not repeat those summaries here. For the purpose of the instant appeal, it is sufficient to state that the Jameses entered a Springfield jewelry store; Donald James asked a clerk to see a diamond; the clerk handed Donald James the diamond; Shirley James directed the clerk's attention to some jewelry in a showcase and asked about it; Donald James turned his back to the clerk and made movements arousing the clerk's suspicion; the clerk approached Donald James to see what he was doing; Donald James placed an ostensible diamond on the counter, asking the clerk whether the store would accept a ring in trade for it; the clerk noticed that the stone did not appear to be the one she had earlier handed Donald James; the clerk and Donald James exchanged words; the Jameses started hurriedly toward the entrance; the clerk took the stone Donald James had placed on the counter to the store's jeweler, who recognized it was not the store's diamond, but was an imitation; the clerk alerted two male employees and they pursued the Jameses, who by this time were running across the parking lot toward a Cadillac; the Cadillac's engine was running and a man was occupying the driver's seat; the Jameses entered the rear of the Cadillac and it began moving; one of the pursuers placed himself in its path to block its departure; he was knocked to the pavement.

A short time later, a Cadillac with three occupants drove onto the parking lot of a convenience store some distance from the jewelry store; the Cadillac's occupants were identified as movant and the Jameses. Some 15 minutes later, the trio appeared at a house about two blocks from the convenience store, and Shirley James asked to use the telephone to call a taxicab. The abandoned Cadillac, owned by and licensed to movant's mother, was searched at the convenience store parking lot; the search yielded another large fake diamond. Movant and the Jameses, known associates of each other, were subsequently arrested in Texas. At movant's trial, witnesses at the scene of the theft identified him as the Cadillac's driver.

Movant did not testify at his trial, but he did testify at the evidentiary hearing on his motion to vacate. In that testimony, movant stated that "at the very early stages" of his representation by W——, movant told W—— he was not present at the scene of the theft. Movant added, however, that he did not supply W—— the names of any "alibi witnesses" who would testify he was not in Springfield that day.

Regarding the defense strategy at movant's trial, movant's testimony was:

"Q ... Didn't [W——] inform the three of you that the basic attack should be the same in all three cases, that is that the identification by the State's witnesses was inadequate? Do you recall that?

A It seems like that was the case in Donald's trial, I'm almost sure.

Q Well, wasn't that the case in your trial?

A I believe so, yeah.

Q Wasn't the—

A Yes, I believe that's right.

. . . .

Q And, in fact, hadn't [W——] filed a motion to suppress the State's witnesses on the basis that their identification had been induced by suggestions by the State on behalf of yourself and the other two defendants, do you recall that motion to suppress?

A Yes, I do.

Q ... [W____] grilled [the pursuer struck by the Cadillac] about his identification of you?

A That's true.

Q Because [W____] tried to point out that this guy couldn't have seen you?

A That's true.

Q Because of the glare on the windshield and I believe—wasn't there also testimony that [the pursuer] at the preliminary hearing might have said that he only saw your facial—the outline of your facial features, do you recall that?

A That's true.

Q And do you recall [W____] cross-examining him about that at the trial?

A Yes."

Movant recounted that Donald Ray James was the first of the trio to be tried.[2] Movant testified he learned in 1985 that after Donald James' trial, Shirley James had told W____ she wanted to testify for movant. Movant's testimony:

"Mrs. James wanted to testify in my behalf, but [W____] advised her that since she hadn't been to trial yet, that she would be incriminating herself.

....

[W____] advised Shirley James not to take the stand in my behalf because she'd be incriminating herself, because she hadn't been to trial yet, and so Mr. James said, 'Well, I've been to trial, I'll take the stand in his behalf', and he says, 'You can't do that, either, or you'll be incriminating yourself in any type of appeal later on'."

Asked at the evidentiary hearing to tell the court "what really happened on the date of this theft from the jewelry store," movant responded:

"I was present in the car. Donald James and his wife Shirley James were visiting me and they asked me if I would drive them to town, and I did and and we got up to—I think it's called the Plaza, I'm not really familiar with the town myself, and they asked if—there was a

store there and I went inside and then they asked if—they wanted to go in this jewelry store, so I told them I'd wait on them, and when they come out they jumped in the back seat of my car and a man jumped in front of my car and they told me—I said, 'What do you want me to do?', that's exactly what I asked them, and they said, 'Go', and that's exactly what I did, and as we was going down the road I said, 'What is going on?', and they told me what they had did, they had stolen a—or tried to switch a diamond in the diamond shop. I got out of the car and I understand now that they later abandoned the car themselves....

Q So you didn't know that—

A I had no idea what they—

Q —they had planned to steal—

A No idea.

....

Q You never told that version to [W____]?

A Never.

Q And he never asked you—

A Not once.

Q —what really happened?

A Never, not once.

....

Q At no point did you ever express a desire to [W____] to try your case separately, and that you might be willing to testify for the State against Mr. and Mrs. James?

A I kept leading up to that, but [W____] never would—because we were always together, I never did get that opportunity."

Donald Ray James, called as a witness by movant at the evidentiary hearing, confirmed that after his (James') trial, movant was the next of the trio scheduled to be tried. Donald James' testimony:

"Q Was there a time when you and your wife discussed with [W____] Mr. Millican's involvement in this?

A Yes, after I had been to trial we talked about it, because she wanted to testify that—

---

**2.** Donald Ray James was tried May 21–23, 1981; movant was tried August 20–21, 1981; Shirley

D. James was tried September 16–17, 1981. *James,* 641 S.W.2d at 149, n. 1.

. . . .

She wanted to tell them that Ben wasn't involved with it, but at that time he said her trial hadn't come up yet and it would hurt her trial and it would also hurt me on my appeal.

Q Did you say anything to [W____]?

A [W____] told us that our testimony wouldn't be necessary anyway, that Ben would be found innocent, so we went on with it like it was. We felt like he knew what he was doing, so—

. . . .

Q Did you make some offer to [W____] at that time about testifying concerning the involvement of Mr. Millican?

A Yes, I told him I would, but it was—I was wondering about her case, and he said like he didn't feel like she would get any time, and I told him I'd be willing to testify. I had already been found guilty, and I felt like I should try to do my best to help him since he wasn't involved in it, and he told me that he felt like I'd get it turned around on my appeal and that I'd be crazy to do it, that he could get him off any way.

Q What was it that you told [W____] you were willing to say in Mr. Millican's defense about his involvement?

A Well, I was just going to tell the truth about it, he really didn't know what was going on there. He didn't have anything to do with it, you know, in essence, except it happened he was there, but what we did, he didn't know about, and he got very upset about it, in fact. . . . we were up here to see him and got him involved in that when he didn't have anything to do with it, and it made him awful mad at us.

Q Was Mr. Millican present during your wife's statement or your statement?

A No.

. . . .

Q Now, did you ever tell Mr. Millican, before his trial, that you were willing to testify for him and that [W____] had said no, supposedly?

A No, I don't think I did.

Q Well, why didn't you do that? You had conversations with Mr. Millican and you kept in touch during the cases.

A Well, because I had talked it over with [W____] and he didn't want us to, so there wasn't any reason of getting him involved in it. . . . "

On cross-examination, Donald James conceded he entered the jewelry store to commit the theft. He also admitted that he initially told W____ he was *not* at the jewelry store, and that the strategy at his trial was to impeach the State's eyewitnesses on their identification of him.

The opinion affirming the denial of Donald James' motion to vacate his conviction reveals that he accused W____ of ineffective assistance for "failure to investigate alibi defense." *James*, 694 S.W.2d at 891. The opinion reports that at the evidentiary hearing on Donald James' motion to vacate, James testified he told W____ before trial that he (James) was in Texas at the time the crime occurred. *Id.*

Attorney W____, called as a witness by movant at the evidentiary hearing, was asked whether he recalled discussing with movant the possibility that a conflict of interest might arise. W____'s testimony:

"No, in my memory that did not arise. It was my practice at that time, as well as now, to discuss with clients any appearance of impropriety, but the three at all times, and even through this date, to me always maintained that they were not involved in the case, that it was a mistaken identification, so I personally saw no conflict as between the three, they just weren't there and didn't do it, even though I think there was an offer at one time by David (sic) James to make restitution in the form of an identical diamond, not the same diamond, but of identical quality and size stone.

. . . .

Q Did you—do you recall advising Ben Millican that there might be a possibility of a conflict of interest in representing him?

A No, I never at any time felt that I had one, nor do I now feel that I had one,

this Court might believe otherwise, in that they were all in the same boat, they just didn't do it, it wasn't them, they weren't they, it was a misidentification, and I saw no conflict.

....

Q Did you explore defenses to the case?

A Oh, yes, certainly. The identification issue seems to be—at this time to have been the big issue, and that would be the natural issue in a case where they take the position they didn't do it and they weren't there.

....

Q Do you recall Shirley James telling you at one point she wanted to testify on behalf of Ben Millican prior to his trial?

A No.

Q Do you know whether or not she said that?

A No, I do not know. I don't recall her having done that, or approached me.

Q Do you recall Don James ever saying to you that he would be willing to testify on behalf of Ben Millican prior to Ben Millican's trial on this charge?

A Oh, no, he had a nine page record. I can't believe he did that, frankly. If he did, I don't remember it. It wouldn't have been credible.

....

Q ... At any time, from the time you were retained by the three defendants through the last trial, Shirley James' trial, did any of them ever indicate to you, sir, that they—that one of the others was not guilty?

A Oh, no, no.

Q Mr.—Mrs. James never came to you and told you that Mr. Millican was not guilty and she would testify for him?

A Not to my memory, I have no memory of any such conversation that did occur.

Q And Mr. James never said to you that he would testify, since he was already convicted, for Mr. Millican in his trial because Mr. Millican was not guilty?

A I don't recall that he did.

Q Did Mr. James ever admit to you that he was guilty?

A Oh, no, no, it was never him."

Attorney W___, Donald Ray James, and movant were the only individuals to testify at movant's evidentiary hearing. However, an issue arose as to whether an affidavit of Shirley D. James, attached to movant's motion to vacate, was to be considered as evidence. The affidavit, dated December 30, 1985, stated, in pertinent part:

"4. My husband DONALD RAY JAMES was the first defendant to be tried in this case and he was found guilty by jury....

5. After my husband was convicted, I informed [W___] that I wanted to testify for BEN MILLICAN as he did not know anything about what transpired in the [jewelry store], other than my husband had ask him to drive us there.

6. BEN MILLICAN was not a party to any diamond theft nor did he have any knowledge whatsoever.

7. When my husband and I came out of the [jewelry store] we waived for BEN MILLICAN to pick us up and we jumped into the back seat of Ben's automobile and my husband told Ben that some people were chasing us and for him to drive off and not let anyone stop him.

8. When BEN MILLICAN learned what had transpired, he became so upset that he left his car in Springfield, Missouri, and flew back home to Dallas, Texas.

9. When I informed [W___] that I wanted to testify for BEN MILLICAN and tell the jury that BEN MILLICAN had no knowledge and was not involved in any diamond theft, [W___] refused to allow me to testify in that he told me I would be incriminating myself as I had not been tried at that time. [W___] informed me that there was no evidence against BEN MILLICAN and he would be acquitted without my testimony.

10. [W___] was represented BEN MILLICAN so I assumed he knew what he was talking about and I took his advice and did not testify. I did not say anything to BEN MILLICAN about my speaking to [W___]."

The dispute regarding the affidavit began during the cross-examination of movant:

"MR. MOORE:[3] Your Honor, at this time the State would offer the original 27.26 motion into evidence in this case, which has been marked Exhibit A,....

MR. MC NABB:[4] No objection to the admission of State's Exhibit A.

THE COURT: I'm not going to receive that into evidence. However, Mr. Moore, it'll be a part of the Court's file.

MR. MOORE: Thank you.

THE COURT: And I will consider it...."

Later, after all three witnesses had completed their testimony, this occurred:

"THE COURT: Anything further for the Movant?

MR. MC NABB: Your Honor, we would take exception to the Court's ruling not admitting the original motion made by Mr. Moore, we feel like it is relevant evidence.

THE COURT: Recall for me what you're referring to.

MR. MC NABB: The original 27.26 motion filed by Mr. Millican was offered by Mr. Moore.

THE COURT: Yes.

MR. MC NABB: The Court ruled that it would not be accepted as evidence, but would take note of it as a document in the file. We would take exception to the Court's ruling and ask the Court to consider that as evidence.

THE COURT: Well, what I meant to say is that the document will not be admitted as an exhibit because it's an original record of this court. I will take judicial notice of all of the contents of it, so that your purpose for offering it all is satisfied, but it will not be necessary that this exhibit be kept separate, it's part of the original record. Do you understand?

MR. MC NABB: My contention is that since Mr. Moore offered that exhibit, I would like to have that in evidence as offered by Mr. Moore.

THE COURT: All right. It'll be available as part of the official records of this court, but it'll remain with our Circuit Clerk, subject to call from the Appeals Court if that is necessary. Do you understand what I have told you? Your purposes are satisfied, Mr. McNabb.

MR. MC NABB: Well, I would like the—what I'm getting at is that he offered—included in that is the affidavit of Shirley James, and it was offered by the State, and I would ask that the Court consider that as evidence.

THE COURT: Let me say this, that as far as the affidavit is concerned, it's apparent to me that the original motion that was filed was accompanied by an affidavit which was not responded to by the State, so that as a matter of pleading practice I believe that the affidavit is a part of the case, the affidavit of Shirley James.

The State may have an objection to that, but I think that the rule is you have to object within a certain number of days after it's filed in support of the motion. It is a first person affidavit, so perhaps your purposes are satisfied.

MR. MC NABB: Thank you, Your Honor"

After counsel for each side presented argument, the judge (henceforth referred to as "the hearing court") dictated findings into the record. Pertinent to the issues on this appeal, the findings were:

"The Court does not believe that the [movant] was denied the effective assistance of counsel.

. . . .

Now, as to the conflict of interest, ... the Court is willing to accept the testimony of the witness Shirley James, which is contained in an affidavit that is attached to the motion under Rule 27.26, ... so that specifically the Court does believe that Shirley James did offer to [W——], before the Millican trial, to testify that Mr. Millican didn't know that anything

3. Assistant Prosecuting Attorney Darrell Moore.

4. Assistant Public Defender James D. McNabb, who represented movant at the evidentiary hearing.

had transpired at the diamond shop, as stated in paragraph five, but also the Court believes, since that is true, that also the rest of the part of paragraph five has to be accepted, and that is that the [movant], Mr. Millican, did drive the James to the diamond shop.

And then in paragraph seven of the affidavit there is an admission by Shirley James that the [movant], Millican, was driving the automobile when it left the diamond shop on that particular day.

The Court, however, does not believe there is any prejudice by reason of a conflict of interest if that does, in fact, constitute a conflict of interest, because the [movant] had consistently told the attorney, [W____], that he was not present at the scene and the defense of the case was based upon an attempt to show the failure of proof of the State or the invalidity of the identification made by the identifying witnesses.

Now, I have reviewed the transcript and I can see that that was a viable defense and it was a fair defense, it was one that was pursued competently by Attorney [W____].

The Court believes that if Shirley James had been called as a witness in the case, that it would have been against the interests of Millican, because Shirley James, as I have just outlined, could be expected to testify to the truth, which is that Mr. Millican was driving the automobile, which then would preclude Mr. Millican from taking the position that he was not at the scene ... during the diamond robbery...."

Movant's first point avers:

"The hearing court clearly erred ... in that [it] did not determine whether or not a conflict of interest existed. If the hearing court had ruled upon movant's issue and had made a determination that a conflict of interest existed, that decision would invalidate the court's subsequent holding that trial counsel rendered effective assistance ... and would entitle movant to relief...."

Movant emphasizes that the hearing court had a duty to make findings of fact and conclusions of law on all issues presented. Rule 27.26(i); *Fields v. State*, 572 S.W.2d 477, 483[3] (Mo. banc 1978). Movant insists that the hearing court's factual finding that Shirley James offered to attorney W____, prior to movant's trial, to testify that movant, at the time the Jameses fled the jewelry store, was unaware of the theft of the diamond, established that attorney W____ "was laboring under a conflict of interest" at the time of movant's trial. Movant asserts that the hearing court should have made a conclusion of law to that effect. Movant's first point prays that we reverse the decision of the hearing court and remand the cause with directions to enter a conclusion of law on whether a conflict existed between the interest of movant and the interest of Shirley James.

For the reasons that follow, it is unnecessary to remand the case to the hearing court on the ground advanced by movant.

■ It was established by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that the due process clause of U.S. Const. Amend. XIV entitles an accused facing a felony charge in a state court to the assistance of counsel guaranteed by U.S. Const. Amend. VI. Representation of codefendants by one lawyer does not violate U.S. Const. Amend. VI unless it gives rise to a conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978). An actual conflict exists when counsel representing codefendants cannot use his best efforts to exonerate one for fear of implicating the other. *Hayes v. Lockhart*, 766 F.2d 1247, 1250 (8th Cir. 1985), *cert. denied*, 474 U.S. 922, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985); *United States v. Auerbach*, 745 F.2d 1157, 1162[5] (8th Cir.1984). A lawyer representing codefendants whose interests conflict cannot provide the adequate legal assistance required by U.S. Const. Amend. VI. *Cuyler*, 446 U.S. at 345, 100 S.Ct. at 1717, 64 L.Ed.2d at 345.

■ Inasmuch as a possible conflict inheres in almost every instance of multiple

representation, an accused who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. However, where—as here—an accused raises no objection at trial to being represented by a lawyer who also represents a codefendant, the accused, in order to obtain relief thereafter, must show that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346–47; *State v. Chandler*, 698 S.W.2d 844, 848 (Mo. banc 1985).

If, in the instant case, Shirley James, prior to movant's trial, did indeed tell W⎯⎯ she would testify that movant did not know she and Donald James had stolen the diamond when they fled the jewelry store, such offer would have immediately given rise to a conflict between the interest of movant and the interest of Shirley James. Such testimony by Shirley James, if accepted as true by the fact-finder at movant's trial, would supply a basis for acquitting movant, but would obviously constitute incriminating evidence against Shirley James, available for use against her by the State at her subsequent trial.

■ We therefore hold, as a matter of law, that *if* Shirley James did in fact make the offer set forth in her affidavit, W⎯⎯, from that time forward, was faced with a conflict between the interest of movant and the interest of Shirley James, as W⎯⎯ could not use the testimony of Shirley James to exonerate movant without implicating Shirley James in the theft. That being so, remand to the hearing court for entry of a conclusion of law to that effect is unnecessary.

There is, however, a larger issue, and it is one of fact, i.e., whether Shirley James really did make the offer to W⎯⎯ set forth in her affidavit. The hearing court, as noted earlier, found that she did, but that finding may have been flawed by a procedural misconception.

The hearing court, as we have seen, stated that inasmuch as Shirley James' affidavit "was not responded to by the State," the affidavit was "a part of the case." If by that the hearing court was manifesting a belief that it was compelled to accept Shirley James' affidavit as true, the hearing court was in error.

The hearing court may have been equating a proceeding under Rule 27.26 with a motion for summary judgment under Rule 74.04. Subsection "(e)" of the latter rule states, in pertinent part:

"When a motion for summary judgment is made and supported [by affidavit] as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ We know of no procedural rule or any decision by the Supreme Court of Missouri providing that allegations in an affidavit appended to a motion by a prisoner under Rule 27.26 are deemed admitted unless the State files an affidavit refuting them. Allegations in a motion under Rule 27.26 are not self-proving; rather, the prisoner has the burden of proving his asserted grounds for relief by a preponderance of the evidence. Rule 27.26(f); *Pool v. State*, 670 S.W.2d 210, 211[1] (Mo.App.1984).

It is unnecessary to decide whether the summary judgment procedure can be utilized, when appropriate, in a proceeding under Rule 27.26, as that issue is not before us. It is manifest from the record that movant filed only a motion under Rule 27.26. He did not follow that up with a motion for summary judgment; consequently, the State had no duty to file an affidavit refuting the averments in the affidavit of Shirley James.

The affidavit of Shirley James was, of course, hearsay, and vulnerable to objection on that basis. *Buder v. Martin*, 657 S.W.2d 667, 671[8] (Mo.App.1983). The affidavit, however, was never formally offered in evidence by either side, so the

occasion for a hearsay objection never arose. A careful reading of the transcript discloses that Mr. Moore offered in evidence only movant's motion, not anything attached to it. Appended to movant's motion, in order, were: (a) a 15–page "memorandum of law," (b) Shirley James' affidavit, (c) a 2–page affidavit of movant, (d) a motion by movant to proceed in forma pauperis, (e) a 3–page "declaration" in support of the request to proceed in forma pauperis, and (f) a motion for appointment of counsel. At no time did Moore offer any of those documents in evidence.

Mr. McNabb likewise never offered the affidavit of Shirley James in evidence. McNabb did urge the hearing court to receive in evidence the "original 27.26 motion filed by Mr. Millican," and McNabb asked the hearing court to "consider" as evidence the affidavit of Shirley James. The hearing court, however, never received the affidavit in evidence, stating instead that the affidavit "is a part of the case," as the State had not "responded" to it. While we cannot be certain what the hearing court meant, it is inferable that the hearing court felt constrained to treat as true the allegations in Shirley James' affidavit.

Irrespective of the hearing court's belief, whatever it was, we hold that the hearing court should not have accepted as true the allegations in the affidavit of Shirley James. The hearing court's findings of fact should have been based solely on the testimony of the three witnesses who appeared in person.

Why, one may ask, is that important? The hearing court, as we have seen, found that movant was not denied effective assistance of counsel. The hearing court observed, and we agree, that if Shirley James had testified at movant's trial in accordance with her affidavit, such testimony would have precluded movant from attempting to persuade the jury that the prosecution's witnesses were mistaken in their identification of him. The hearing court also found, and we concur, that the effort to discredit the identification of movant by the State's witnesses at his trial was a viable defense, competently pursued by W——.

Accordingly, one could reasonably conclude, on the record before us, that W——, in representing movant, exercised the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances. *Seales v. State*, 580 S.W.2d 733, 735–37[3] (Mo. banc 1979). One could likewise conclude that W—— rendered reasonably effective assistance measured by an objective standard of reasonableness, the test for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65[6], 80 L.Ed.2d 674, 693[11] (1984). The Supreme Court of Missouri has perceived no significant difference between the *Seales* test and the *Strickland* test. *Chandler*, 698 S.W.2d at 848 n. 10.

It must be remembered, however, that here we are dealing with a contention that W—— was unable to render effective assistance to movant because of a *conflict of interest*. We have learned from *Cuyler* that when this is the issue, the test is whether an actual conflict of interest adversely affected counsel's performance. *Accord: State v. Zismer*, 696 S.W.2d 349, 354[10] (Mo.App.1985); *State v. Murphy*, 693 S.W.2d 255, 260–61[3] (Mo.App.1985).

*Chandler*, 698 S.W.2d at 847, teaches that where a conflict of interest exists, the lawyer should disclose it to the client, who can then make an informed decision on whether to continue to be represented by the lawyer.

■ In the instant case, *if* Shirley James did, prior to movant's trial, tell W—— the things set forth in her affidavit, W—— should have immediately informed movant, who could then have decided whether to utilize Shirley James' testimony in his defense, or to pin his hopes for acquittal on the chance that the jury would find the identification testimony of the State's witnesses unpersuasive. Movant could also, of course, have decided whether to keep W—— as his attorney or retain other counsel.

■ If, after full disclosure, movant, as a matter of trial strategy, had decided to

forgo Shirley James' testimony, and had also opted to proceed to trial with W____, W____ would have been freed from the conflict of interest, as W____ would no longer have faced the dilemma of implicating Shirley James in an effort to exonerate movant. Until movant made those choices, however, W____—if Shirley James' affidavit be true—faced a conflict of interest which, under *Chandler*, adversely affected W____'s performance, in that W____ was not free to exercise independent judgment in his representation of movant. 698 S.W.2d at 848. Said another way, W____'s decision on whether to call Shirley James as a witness for movant could not be based solely on whether her testimony afforded movant the best chance for a favorable verdict, as W____ also represented Shirley James, and could not use her as a witness for movant without imperiling her own interest. If a conflict of interest actually affects the adequacy of an accused's representation, no demonstration of prejudice is required in order to obtain relief. *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1719, 64 L.Ed.2d at 347; *Chandler*, 698 S.W.2d at 849; *Murphy*, 693 S.W.2d at 260–61.

It follows that movant's right to relief hinges on whether Shirley James and Donald James, or either of them, told W____, prior to movant's trial, that they would testify movant was unaware, prior to fleeing the scene of the theft, that the theft had occurred.

From the testimony at movant's evidentiary hearing, several factual findings are possible. The hearing court could accept as true the testimony of Donald James that Shirley James offered to W____ to testify for movant, but disbelieve the testimony of Donald James that he (James) offered to W____ to testify for movant. The hearing court could believe the testimony of Donald James that he offered to W____ to testify for movant, but disbelieve the testimony of Donald James that Shirley James offered to W____ to testify for movant. The hearing court could find from the testimony of Donald James that both he and Shirley James offered to W____ to testify for movant. The hearing court could disbelieve the entire testimony of Donald James, and find from the testimony of W____ that neither Donald James nor Shirley James offered to testify for movant.

Movant, of course, admittedly has no direct knowledge on that subject. The only pertinent element in movant's testimony was that W____ never informed movant that Donald James or Shirley James had offered to testify for him. W____, of course, admits never saying anything to movant in that regard, as, according to W____, the Jameses' offers were never made.

It is evident from what we have said that the order of the hearing court must be reversed, and the cause must be remanded to the hearing court for factual findings on the above issues, based exclusively on the testimony and the exhibits formally received in evidence at the evidentiary hearing.[5] If, on remand, movant requests the opportunity to present Shirley James as a witness, the hearing court is free to grant such request, and to afford the State an opportunity to rebut any testimony given by Shirley James.

We are not oblivious that movant's testimony at the evidentiary hearing establishes that he lied either to W____ (by maintaining he was not at the scene of the theft) or to the hearing court (by testifying he was the driver of the Cadillac). We are equally mindful that Donald James' testimony at movant's evidentiary hearing manifests similar contempt for the truth. This case amply illustrates the perils encountered by a lawyer in attempting to represent, in an ethical and skillful manner, clients who disdain the truth.

An attentive reader will recognize that if Shirley James did in fact offer to W____ to testify for movant, W____ would have faced an ethical problem if W____ personal-

5. A letter from movant to W____ dated August 13, 1985, and a letter from W____ to movant in reply, dated September 4, 1985, were received in evidence. W____'s letter denies recollection of any conversation with Shirley James wherein she expressed a desire to testify for movant. It added that W____ always recommends that a client not incriminate himself, but that all decisions of that type are left with the client.

ly disbelieved Shirley's manifestation of movant's innocence. What W_____'s proper course would have been in such circumstances is not before us to decide, and we express no opinion thereon.

Having concluded that the order of the hearing court must be reversed, and that the cause must be remanded for factual findings on the issues heretofore enumerated, we have no further rulings to make on movant's first point.

Movant's second point asserts that the hearing court applied the "wrong standard" in rejecting his contention that he received ineffective assistance of counsel. The hearing court, according to movant, applied the test of *Strickland* and *Seales*. Movant argues that because his claim of ineffective assistance was based on an alleged conflict of interest, the hearing court should have applied the test set forth in *Cuyler, Chandler* and *Murphy*. Movant's second point prays that the cause be remanded "so that the hearing court can reconsider its findings of fact and conclusions of law in light of the proper conflict of interest standard."

Inasmuch as the cause is being remanded, it is sufficient for the purpose of movant's second point to note that the law applicable to a claim of ineffective assistance of counsel by reason of conflict of interest has been exhaustively discussed in considering movant's first point. The hearing court, on remand, will presumably apply the correct test.

Movant's third (and final) point is essentially a reprise, with some embellishments, of his second. The third point requires no additional comment.

The order denying movant's motion to vacate his conviction is reversed, and the cause is remanded to the hearing court for further proceedings consistent with this opinion.

GREENE, P.J., and HOLSTEIN, J., concur.