UNITED STATES of America, Appellee,

v.

Rosena POSTON, Appellant.

UNITED STATES of America, Appellee,

v.

Bernard F. POSTON, Appellant.

UNITED STATES of America, Appellee,

v.

Lizzie POSTON, Appellant.

Nos. 83–1146 to 83–1148.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1983.

Decided Feb. 9, 1984.

Certiorari Denied April 30, 1984.
See 104 S.Ct. 2179.

James M. Rosenbaum, U.S. Atty., Donald M. Lewis, Asst. U.S. Atty., Dist. of Minn., Minneapolis, Minn., for appellee.

Wayne G. Nelson, Legal Intern.

Scott F. Tilsen, St. Paul, Minn., for Rosena Poston.

Mark W. Peterson, Minneapolis, Minn., for Bernard F. Poston.

Daniel M. Scott, Minneapolis, Minn., for Lizzie Poston.

Before ROSS, McMILLIAN and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

In this case Rosena Poston appeals from a conviction of misapplying federally insured funds in violation of 18 U.S.C. § 657. Lizzie and Bernard Poston appeal from convictions of aiding and abetting Rosena's misapplication of federally insured funds in violation of 18 U.S.C. § 2(b) and 18 U.S.C. § 657.

In arguing for reversal, appellants assert that joint representation of the three defendants by a single attorney denied them the effective assistance of counsel guaranteed by the Fifth and Sixth Amendments. They also assert that this right was not effectively waived since the hearing conducted on the propriety of the joint representation did not meet the standards set out by Rule 44(c) of the Federal Rules of Criminal Procedure and by this court in *United States v. Lawriw,* 568 F.2d 98 (8th Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978). Bernard Poston asserts that evidence of other crimes was erroneously admitted against him contrary to Rules 403 and 404(b) of the Federal Rules of Evidence. Lizzie Poston asserts that the District Court should have, *sua sponte,* given a specific cautionary instruction admonishing the jury to consider certain evidence against Bernard and Rosena Poston only

and not against her. As we find all these contentions to be without merit, we affirm.

*Facts*

On April 14, 1982 Bernard Poston was employed as a mail clerk at Cargill, Inc. in Wayzata, Minnesota. His sister Rosena Poston was employed as a teller-payroll clerk at the Minneapolis Federal Employees Credit Union. Bernard Poston, Rosena Poston and their mother, Lizzie Mary Poston, all had accounts at the credit union.

The City of Minneapolis issued a $15,245.78 check dated April 5, 1982 to Cargill, Inc. (Cargill check) in payment for road salt. The Cargill check was mailed in a window envelope with a return address of "Minneapolis Comptroller/Treasurer." It was possible to recognize the contents of the envelope as a check through the window. Normally the Cargill check would have been delivered by Bernard Poston to the salt division unopened along with other mail. The salt division personnel would then have opened the envelope and endorsed the Cargill check with a stamp. This check contained no such stamped endorsement.

The Cargill check, along with a $54.22 check written on the account of Bernard Poston and signed by him, was deposited in Lizzie Poston's account at the credit union. Lizzie Poston's former balance was $38.20. The deposit to Lizzie Poston's account was entered on terminal number 2. The teller code entered on Lizzie Poston's account history card was "F2," which was the teller code of Cathy Erickson, another teller in Rosena Poston's branch. Erickson denied entering the deposit. A check of the audit proof tape showed that the person making the transaction did not follow the normal procedure of printing the identification of the account holder. The person also inadvertently entered the teller identification code "B" before correcting it to read "F." "B" was Rosena Poston's teller identification code. The audit tape also revealed that the deposit was entered during midmorning on April 14, and that Cathy Erickson took her break at about that time.

That same day, $5,300 of the funds from that deposit were transferred, $2,750 into one of Rosena Poston's accounts and $2,550 into Bernard Poston's account. The transfers were made in a manner which prevented them from appearing on the audit proof tape. Rosena admitted to making these transfers.

Later that day Lizzie Poston appeared at the downtown branch of the credit union and asked to withdraw $10,000 in cash from her account. Lizzie Poston was told such a large amount could not be paid out in cash, and was asked if she would accept a check. She said no, and the teller compromised by giving her $3,379.50 in cash and eight money orders totaling $6,622.50.[1] Lizzie Poston spent most of the cash within the next two days. Two of the money orders were given to Bernard Poston and the rest were either cashed or used to pay bills.

Bernard Poston made purchases with one of the money orders on April 16. He attempted to negotiate the second money order at a local bank. The bank teller, remembering an alert had been posted about some stolen money orders, contacted her supervisor and asked her to call the police.

Further examination of Bernard Poston's account showed that on April 12 Bernard had created an artificial balance of $15,000 in his account by depositing a check for that amount drawn on his account (*i.e.*, a check drawn on account A and deposited in account A). This transaction, a type of "check kite," was performed by Rosena Poston at her terminal. Rosena Poston admitted to entering this deposit but testified that she had permission from her supervisor to do so. Her supervisor denied giving such permission.

All three defendants denied involvement in any misappropriation scheme. Lizzie Poston testified that she was expecting a payment from the Veterans Administration (VA) on behalf of her disabled husband when these events occurred. She asserted her belief that the large balance in her account was the result of a direct deposit by

the VA. Her husband had received a $9,000 VA payment in 1980 and she had been seeking additional payments through her congressman. A VA representative testified that no authorization for direct deposits to Mr. Poston's credit was on file, and that the VA had done nothing to give the Postons the impression that a lump sum payment would be paid in April 1982.

### The Hearing Before the Magistrate

A pretrial hearing was held before United States Magistrate Brian P. Short, pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure. At this hearing, Magistrate Short advised Rosena, Bernard, and Lizzie Poston of the problems inherent in joint representation, and of their right to have separate counsel. He gave examples of conflicts and their potential impact on their attorney's ability to mount an effective defense at trial. Magistrate Short questioned each of the defendants on these points, and each of them affirmatively stated they wished to continue joint representation.

### *Discussion*
### I. *The Joint Representation Hearing*

The defendants argue that the hearing conducted by Magistrate Short fails to meet the standards established by Rule 44(c) of the Federal Rules of Criminal Procedure and by this court under *United States v. Lawriw, supra,* for a valid waiver of the defendants' right to separate representation. Having argued the invalidity of the waiver, defendants further argue that there existed actual conflicts between the positions of the three defendants at trial which adversely affected their lawyer's representation, thus compelling reversal. *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978); *Parker v. Parratt,* 662 F.2d 479, 483 (8th Cir.1981). Because we find that the waiver of the defendants' right to separate representation was knowing, voluntary, and intelligent, we

---

1. The actual withdrawal totaled $10,002.

need not decide whether any actual conflicts existed.

■ The Sixth Amendment right to assistance of counsel means the right to effective assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). Representation clouded by conflict of interests arising from joint representation of several criminal defendants may constitute ineffective assistance of counsel, but joint representation is not *per se* a constitutional violation. *Holloway v. Arkansas*, 435 U.S. at 482, 98 S.Ct. at 1177. Moreover, as with other constitutional rights, the right to effective assistance of counsel may be waived, provided that the waiver is knowing, voluntary and intelligent. *United States v. Swanson*, 509 F.2d 1205, 1210 n. 7 (8th Cir.1975). Specifically, this Court adopted a rule in *United States v. Lawriw, supra,* requiring the trial court to conduct a pre-trial inquiry on the propriety of joint representation. Under *Lawriw,* the trial court must question the defendants on their understanding of the possible problems and conflicts that might arise in the course of litigation.

The requirements of *Lawriw* were established under the supervisory powers of this Court. Subsequently the Supreme Court promulgated Rule 44(c), which mandates a pre-trial inquiry in all instances of joint representation in federal criminal proceedings, but does not go as far as *Lawriw* in specifying the particulars of the inquiry.

The chief disagreement between the defendants and the government here is over the depth and extent of such an inquiry. Defendants argue that an effective waiver of the right to separate representation requires an inquiry of the kind prescribed in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975). In that case, the Fifth Circuit set out the following guidelines for determining a defendant's understanding of the consequences of joint representation:

> [The] district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.... It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." ... Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

*Id.* at 278. *Garcia* thus spells out in significant detail what should be done to assure an adequate waiver. We do not believe, however, that it represents the only acceptable approach to the waiver problem. When this Court formulated its standards for joint representation hearings in *Lawriw,* it expressly considered the *Garcia* standards, *see Lawriw,* 568 F.2d at 104, and chose to adopt instead the mode of inquiry approved by the Minnesota Supreme Court in *State v. Olsen,* 258 N.W.2d 898 (Minn.1977), as follows:

> The defendant must voluntarily and with full knowledge of the consequences decide on dual representation. The court should address each defendant personally and advise him of the potential danger of dual representation. The defendant should have an opportunity and be at liberty to question the trial court on the

nature and consequences of dual representation and the entire procedure should be placed on the record for review.

*Id.* at 905. In adopting the *Olsen* standards, this court held:

> . . . [I]t is the duty of the trial court to make an inquiry similar to that required in *State v. Olsen, supra,* and we anticipate that without such an inquiry a finding of knowing and intelligent waiver will seldom if ever be sustained by this Court.

*Lawriw,* 568 F.2d at 105.

■ In conducting the pre-trial inquiry in the instant case, the magistrate addressed each defendant individually and discussed several possible conflicts that might arise during the course of litigation.[2] He pointed out that by accepting joint representation, their attorney would be unable to pursue any defense which might tend to aid one defendant at the expense of others. The defendants were given the opportunity to question the magistrate about the consequences of joint representation. At the request of the government's attorney, the magistrate further advised the defendants that joint representation sacrifices the attorney-client privilege insofar as co-defendants are concerned. Each defendant affirmatively stated his or her desire to go forward with joint representation. We conclude that the magistrate's hearing was within the standards established by this court in *Lawriw* and by Rule 44(c), and that nothing more was necessary to assure an adequate waiver.

## II. *Bad Acts Evidence: Bernard Poston's "Check Kite"*

Appellants also assert that the trial court erred by admitting certain bad acts evidence against Bernard Poston, and further failed to give an appropriate limiting instruction to ensure that the jury did not consider this evidence in their deliberations regarding Lizzie Poston. The evidence complained of was the deposit of $15,000 made by Bernard Poston into his own account with a check drawn on that same account two days before the charged crime occurred. This transaction was made by Rosena Poston at her teller terminal. Rosena Poston admitted making the deposit but alleged that she did so with the permission of her supervisor. Her supervisor denied giving such permission.

■ The standard of review on questions relating to the admissibility of evidence is whether the trial court abused its discretion. The admissibility of this evidence is governed by Rules 403 and 404(b) of the Federal Rules of Evidence, which state:

**Rule 403.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

.  .  .  .  .

**Rule 404(b).**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of other acts must meet four requirements in order to be admissible under 404(b):

1. The evidence must be admissible upon a material issue raised;

---

**2.** Appellants suggest that the fact that the inquiry was conducted by a magistrate instead of a district court judge renders the hearing ineffective. We do not agree. The United States Magistrates Act, 28 U.S.C. § 636(b)(1), gives magistrates the authority to hear pre-trial matters. District of Minnesota Local Rule 14 E(n) gives magistrates the power to hear matters pertaining to the appointment of attorneys. *See United States v. Zajac,* 677 F.2d 61, 63 (11th Cir.1982) (inquiry conducted by magistrate as to defendants' understanding of consequences of joint representation held proper).

2. The evidence must be similar in kind and reasonably close in time to the charge on trial;

3. Evidence of the other crimes or bad acts must be clear and convincing; and,

4. Prejudice to the defendant must be outweighed by the probative value of the evidence.

*United States v. Frederickson,* 601 F.2d 1358, 1365 (8th Cir.), *cert. denied,* 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

■ We hold that the District Court did not abuse its discretion by admitting this evidence. In applying the four part test, *supra,* to the instant case, we find that the "check kite" is admissible against Bernard Poston on the material issue of motive to commit the charged offense, since the misapplication of funds would have been sufficient to cover the "kited" check. The "check kite" is similar in kind to the aiding and abetting of a misapplication of funds, since both involve knowledge of bank and check processing procedures. The transaction occurred only two days before the charged offense and Bernard admitted to making the deposit; thus the transaction is both close in time and is not disputed. The evidence of this transaction is clear and convincing. Finally, the probative value of the evidence, which demonstrates both motive and opportunity to aid in the misapplication, clearly outweighs any possible prejudicial effect on the defendant.

III. *Subsequent Events Evidence: Bernard Poston's Attempted Negotiation of the Money Order*

■ Bernard Poston further argues that the admission of evidence pertaining to his attempted negotiation of one of the money orders obtained by Lizzie Poston constitutes plain error. Bernard concedes that if he is to prevail on this ground, he must do so under the plain error rule, since no objection was made to the introduction of this evidence at the time it was offered. Thus, Bernard must show that the trial court erred in admitting this evidence and that

the error had a substantial adverse effect on his rights. *United States v. Grady,* 665 F.2d 831, 834 (8th Cir.1981). We hold that the admission of this evidence was not plain error. Indeed, we believe this evidence was admissible even if a timely objection had been made to its introduction.

■ Subsequent events or transactions may be introduced if they are an integral part of the offense for which the defendant is charged. *United States v. Gallington,* 488 F.2d 637, 641 (8th Cir.1973), *cert. denied,* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). A criminal activity is an integral part of the offense charged if it is " 'so blended or connected with the one on trial as that proof of one incidentally involves the other or explains the circumstances thereof; or tends logically to prove any element of the crime charged.' " *United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir.1979) (quoting *United States v. Miller,* 508 F.2d 444, 448–49 (7th Cir.1974)). Here, the attempted negotiation of the money order by Bernard Poston was an effort to reap the benefits of the misapplication of funds, and as such represented the culmination of his participation in the scheme. The teller's reference to the police alert regarding the stolen money orders was admissible as it explained the circumstances of the teller's decision not to cash the money order.

IV. *Adequacy of the Jury Instructions*

Lizzie Poston complains of the failure of the District Court to give a cautionary instruction regarding the inapplicability to her of the evidence of Bernard's "check kite." Although no request for such a cautionary instruction was made, she asserts that the judge's failure to give the instruction *sua sponte* was plain error.

■ The adequacy of the jury instructions must be determined by an examination of all of the instructions given. *United States v. Williams,* 604 F.2d 1102, 1120 (8th Cir.1979). We have reviewed the instructions given and find they adequately guarded against the jury's applying evi-

dence regarding Bernard Poston's "check kite" against Lizzie Poston.[3] The judge gave a limiting instruction at the time the evidence was admitted and later, in his charge to the jury, cautioned the jurors to consider each defendant's case separately and not to apply evidence introduced against only one defendant against any other defendant. And even if we assume *arguendo* that a more specific limiting instruction should have been given if requested at trial, it is clear—applying the plain error standard and viewing the instructions in their entirety—that Lizzie Poston's rights were not substantially impaired by the trial court's failure to give such an instruction *sua sponte*. *See United States v. Milham,* 590 F.2d 717, 722 (8th Cir.1979).

The convictions are affirmed.

**3.** The judge gave the following jury instructions pertinent to Bernard Poston's "check kite":

[Instruction given at introduction of evidence.]

THE COURT: Counsel, I am going to point out to our jurors at this point that as you have seen now this witness has been permitted to testify as to events that occurred on April 8 I think they started—

MR. LEWIS: The 12th, I believe.

THE COURT: A deposit of $15,000 on the 12th of April and I want our jurors to have in mind that the indictment charges an offense occurring on or about April 14, specifically with reference to a misapplication of $15,-245.78 and you will recognize we are hearing testimony now about an event that occurred two days earlier.

I want you to have in mind that although this evidence is coming in it is not coming in to prove character of a person or to show that a person acted in conformity with this kind of conduct as of April 14. It is admissible for another purpose, however, that you may consider it on such items as motive or opportunity, intent, plan or absence of mistake or accident. So there is a limiting feature of this kind of evidence because you will recognize immediately I think that it does not relate specifically to the charge in the indictment with reference to April 14 so it cannot be shown that because you did it on such and such a day you must have done it on some other day. That is not the idea of the evidence.

But to the extent that you feel it bears on these other issues in the case, it may be considered for that purpose only. . . .

Trial Transcript (Tr.) at 162–63.

[Instruction given at close of trial.]

[THE COURT:] Have in mind also we are trying the case here separately as to each of the three defendants, Bernard, Rosena and Lizzie Mary Poston and although we are trying them together each of the defendants is entitled to separate consideration as to their particular circumstance. So what you should do is analyze the evidence with respect to a particular individual defendant, leaving out of consideration entirely any evidence that was admitted solely as against the other defendant because I am sure as you realize each of the defendants is entitled to have their case determined from evidence as to his or her own acts and statements and conduct and evidence that relates to them. . . .

Tr. at 536–37.