Judy HENDERSON, Movant/Appellant,

v.

**STATE of Missouri,**
**Defendant/Respondent.**

No. 14641.

Missouri Court of Appeals,
Southern District,
Division One.

July 23, 1987.

Robert B. Ramsey, Clayton, for movant/appellant.

William L. Webster, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for defendant/respondent.

HOLSTEIN, Judge.

Judy Henderson ("Movant") appeals from a judgment dismissing her Rule 27.26[1] motion following an evidentiary hearing. Movant's primary claim is that she was denied effective assistance of counsel in the trial court because her attorney, in representing a co-defendant, had a conflict of interest which affected his performance in communicating to and advising her about a plea bargain agreement which had been offered by the state. The specific point on appeal is whether the findings of the motion court that movant had waived any objection she had to the conflict of interest, and that she was not prejudiced by such conflict of interest, are clearly erroneous. We affirm.

Our review here is limited to determining whether the motion court's findings of fact, conclusions of law and judgment are clearly erroneous. Rule 27.26(j). Assessing the credibility of witnesses is for the motion court and even where the mov-

ant's testimony is uncontradicted, the judge does not have to believe it. *Caraker v. State*, 712 S.W.2d 23, 24 (Mo.App.1986). We note that much of movant's testimony was contradicted, even by her own witnesses.

The Rule 27.26 evidentiary hearing developed the following facts:

Harry Klein was found murdered in Greene County, Missouri, on July 13, 1981. A few days later, movant and her paramour, Greg Cruzen, met with attorney James L. McMullin at his office in Kansas City. They informed McMullin that they wished to employ him as counsel when and if they should be apprehended for the murder of Klein. Each admitted to McMullin their participation in the robbery and murder of Klein. They told him it was their intention to flee to Alaska. He advised against such flight.

McMullin further told them that a time may come in the representation where their interests might become divergent. He suggested that each employ separate counsel in order to avoid the creation of any conflict. Each of the defendants declined this suggestion.

Prior to that meeting, McMullin had never met Greg Cruzen. He was acquainted with movant, having represented her in a divorce and having had other clients whom she had referred to him. In addition, she was a friend of one of McMullin's secretaries. Apparently it was movant, not Cruzen, who selected McMullin because she believed McMullin always won his cases.

Movant and Cruzen fled to Alaska, where they were eventually arrested for capital murder.

After waiving extradition and returning to Missouri, movant and Cruzen were jointly represented by McMullin. At one point prior to movant's trial, the Greene County prosecutor approached McMullin with a plea bargain agreement, under the terms of which if movant would plead guilty to first degree murder and truthfully testify against Cruzen, she would receive a life sentence, rather than be tried for capital

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

murder.[2] McMullin testified that he informed both of the defendants about this plea offer and also informed them that he would have to withdraw if either decided to testify against the other, again citing the conflict of interest that would develop. Cruzen, who testified on behalf of movant, essentially confirmed McMullin's version of events; that being that, prior to movant's trial, each of the defendants professed their love for one another and did not desire to accept any plea bargain which would require one of them to testify against the other.

Attorney Ben Upp of Springfield had been acting as local counsel for movant during the period of time prior to her trial. At no time did Upp represent Cruzen. He had been employed for movant by her family. Movant was informed by Upp of the state's offered plea bargain. She never informed Upp of her desire to accept the plea bargain.

Movant denied that McMullin ever discussed a possible conflict of interest with her. However, she admitted McMullin had told both her and Cruzen that if a dispute arose between them and one decided to testify against the other, he would have to withdraw as counsel for both. While movant admitted that prior to her trial she was in love with Cruzen, she also claimed to have requested McMullin to seek a plea bargain under which she would testify against her lover at his trial for capital murder. Contrary to the testimony of McMullin, Cruzen and Upp, movant stated that no plea bargain was ever communicated to her. In view of these contradictions and inconsistencies, the motion court could properly disregard movant's testimony.

Movant's mother and stepfather were called in support of her contention that no plea agreement had been communicated to movant by McMullin. Each testified that

prior to the trial, McMullin said in their presence that no plea agreement was available. From the beginning, McMullin had been instructed by movant that he should not disclose to her family that she admitted her participation in the murder of Klein. Since part of the plea agreement required "truthful" testimony about movant's participation, it is reasonable that the plea agreement would not be disclosed to movant's family by McMullin.

Movant was convicted of capital murder and sentenced to life in prison without possibility of probation or parole for fifty years. The conviction was affirmed on appeal. *State v. Henderson*, 666 S.W.2d 882 (Mo.App.1984). This Rule 27.26 proceeding followed.

The motion court filed findings of fact and conclusions of law, which found that, prior to her trial, movant had been represented by Upp; that she had the ability to talk with him on several occasions prior to the first trial setting; that Upp had communicated the offer of the state that she would receive a life sentence on a reduced charge of first degree murder; and that movant knowingly, freely, and without interference by Cruzen, rejected that plea agreement.

The court further found as fact that McMullin had informed her of the potential conflict of interest, and that she had given her oral waiver of the same so that she could continue having contact with Cruzen while they were incarcerated in the Greene County jail. The court also found that trial counsel did not coerce, pressure, or otherwise wrongfully induce the movant to waive her rights, and that there was no attempt to mislead movant in regard to the status of plea negotiations. The court determined that an offer was made to and rejected by movant, but no offer of a plea

---

**2.** Under the statutes in effect at the time of the Klein murder, capital murder was defined as unlawfully, willfully, knowingly, deliberately and with premeditation, killing or causing the killing of another human being. § 565.001, RSMo 1978. Murder in the first degree was the unlawful killing of a human being without a premeditated intent to cause death if the killing was committed in the perpetration of or in an attempt to perpetrate a designated felony, including robbery. § 565.003, RSMo 1978. Under the former section, the maximum punishment was death, while the minimum punishment was imprisonment for life without parole or probation for fifty years. Under the latter section, the only punishment provided was life imprisonment without reference to possibility of probation or parole. § 565.008, RSMo 1978.

bargain was available to movant at any time when she was willing to accept it.

The motion court concluded that the allegations of movant, including those of ineffective assistance of counsel, were without merit, and dismissed the motion.

■ In order to prevail, the movant is required to demonstrate that her attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that she was prejudiced thereby. *Love v. State*, 670 S.W.2d 499, 501 (Mo. banc 1984). A trilogy of decisions [3] by the Supreme Court of the United States reflect the metamorphosis of the current standard for assessing an accused's Sixth Amendment right to the effective assistance of counsel in those situations in which counsel represents multiple defendants.

In discussing the culminating case of the above-cited trilogy, the court said in *State v. Murphy*, 693 S.W.2d 255, 261 (Mo.App. 1985):

> Pragmatically, *Cuyler* appears to advance a two-tiered standard for determining whether representation of multiple defendants is violative of an accused's Sixth Amendment right to effective assistance of counsel. First, a complaining defendant carries the burden of showing that representation of multiple defendants constituted an *actual conflict of interest*. Second, if *an actual conflict of interest* is shown, a complaining defendant must go a step further and carry the burden of showing that the conflict of interest *adversely affected* counsel's performance in his representation of defendant.

■ The movant, therefore, has the responsibility of showing how the conflict of interest adversely affected counsel's performance. The representation of multiple defendants is not per se a violation of the Sixth Amendment's guarantees of effective assistance of counsel. *Hopson v. State*, 728 S.W.2d 276, 277 (Mo.App.1987).

■ Having searched the brief and transcript, we find no suggestion of how movant was adversely affected by absence of an "independent" counsel after she was informed of the possible conflict of interest and rejected the proffered plea agreement. Movant's complaints ring hollow in view of her opportunity to confer with Upp about the plea bargain. Her brief admits that attorney Upp was an "excellent example" of a disinterested lawyer.

■ The Code of Professional Responsibility in effect at the time of movant's trial defined the standard of loyalty which movant's attorney owed to her. DR 5–105 provided as follows:

> (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).
>
> (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).
>
> (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

The ethical pitfalls inherent to joint representation of codefendants in criminal cases demand the utmost prudence by attorneys accepting such employment. Where the facts show a departure from "prevailing professional norms" in multiple defendant cases, there is a sufficient showing that the conflict of interest actually affected the adequacy of the representation. *State v.*

**3.** *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); and *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

**258**

*Chandler,* 698 S.W.2d 844, 849 (Mo. banc 1985). Accepting the facts as found by the court and supported by the evidence, movant's attorneys complied with the above quoted professional standards.

 The record demonstrates that movant was informed of the potential conflict of interest, and that she was informed of the plea agreement by both McMullin and Upp but refused to accept it. Having been so informed, she consented to the dual representation. Such informed consent remedies any apparent conflict of interest. *Harris v. State,* 609 S.W.2d 723, 724 (Mo. App.1980); *Davis v. State,* 573 S.W.2d 736, 737 (Mo.App.1978). The findings by the trial court were not clearly erroneous.

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.