Judy A. HENDERSON, Appellant,

v.

Donald SMITH; Attorney General,
State of Missouri, Appellees.

No. 89–1050.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1989.

Decided May 9, 1990.

Rehearing Denied July 6, 1990.

Robert B. Ramsey, St. Louis, Mo., for appellant.

Jared Cone, Jefferson City, Mo., for appellees.

Before ARNOLD and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

MAGILL, Circuit Judge.

Judy A. Henderson appeals the district court's [1] order denying her petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The district court found that trial counsel's dual representation of Henderson and her lover [2] did not violate her sixth amendment right to effective assistance of conflict-free counsel.[3] After a careful review of the record, we hold that Henderson knowingly, voluntarily and intelligently waived her right to conflict-free counsel. Therefore, we need not reach the merits of her claim. We affirm the order

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. Henderson and her lover-codefendant, Greg Cruzen, were tried separately. Although Henderson was convicted of capital murder, Cruzen was subsequently acquitted.

3. The district court further found that Henderson failed to make an adequate showing of prosecutorial misconduct. Henderson has not raised the prosecutorial misconduct issue on appeal. We therefore deem it waived.

of the district court albeit on different grounds.

## I.

Henderson was convicted of capital murder and sentenced to life imprisonment without the possibility of either parole or probation for fifty years. The Missouri Court of Appeals affirmed her conviction on direct appeal. *State v. Henderson*, 666 S.W.2d 882 (Mo.App.1984). Henderson subsequently initiated a post-conviction proceeding in the Circuit Court of Greene County (motion court) pursuant to Rule 27.26 (repealed effective January 1, 1988). The court dismissed her motion to vacate judgment. She appealed the dismissal to the Missouri Court of Appeals. In denying Henderson relief, the court set forth the facts as developed during the course of the Rule 27.26 evidentiary hearing before the motion court.

Harry Klein was found murdered in Greene County, Missouri, on July 13, 1981. A few days later, [Henderson] and her paramour, Greg Cruzen, met with attorney James L. McMullin at his office in Kansas City. They informed McMullin that they wished to employ him as counsel when and if they should be apprehended for the murder of Klein. Each admitted to McMullin their participation in the robbery and murder of Klein. They told him it was their intention to flee to Alaska. He advised against such flight.

McMullin further told them that a time may come in the representation where their interests might become divergent. He suggested that each employ separate counsel in order to avoid the creation of any conflict. Each of the defendants declined this suggestion.

. . . .

[Henderson] and Cruzen fled to Alaska, where they were eventually arrested for capital murder.

After waiving extradition and returning to Missouri, [Henderson] and Cruzen were jointly represented by McMullin. At one point prior to [Henderson]'s trial, the Greene County prosecutor approached McMullin with a plea bargain agreement, under the terms of which if [Henderson] would plead guilty to first degree murder and truthfully testify against Cruzen, she would receive a life sentence, rather than be tried for capital murder. McMullin testified that he informed both of the defendants about this plea offer and also informed them that he would have to withdraw if either decided to testify against the other, again citing the conflict of interest that would develop. Cruzen, who testified on behalf of [Henderson], essentially confirmed McMullin's version of events; that being that, prior to [Henderson]'s trial, each of the defendants professed their love for one another and did not desire to accept any plea bargain which would require one of them to testify against the other.

Attorney Ben Upp of Springfield had been acting as local counsel for [Henderson] during the period of time prior to her trial. At no time did Upp represent Cruzen. He had been employed for [Henderson] by her family. [Henderson] was informed by Upp of the state's offered plea bargain. She never informed Upp of her desire to accept the plea bargain.

[Henderson] denied that McMullin ever discussed a possible conflict of interest with her. However, she admitted McMullin had told both her and Cruzen that if a dispute arose between them and one decided to testify against the other, he would have to withdraw as counsel for both. While [Henderson] admitted that prior to trial she was in love with Cruzen, she also claimed to have requested McMullin to seek a plea bargain under which she would testify against her lover at his trial for capital murder. Contrary to the testimony of McMullin, Cruzen and Upp, [Henderson] stated that no plea bargain was ever communicated to her. In view of these contradictions and inconsistencies, the motion court could properly disregard [Henderson]'s testimony.

[Henderson]'s mother and stepfather were called in support of her contention that no plea agreement had been commu-

nicated to [Henderson] by McMullin. Each testified that prior to the trial, McMullin said in their presence that no plea agreement was available. From the beginning, McMullin had been instructed by [Henderson] that he should not disclose to her family that she admitted her participation in the murder of Klein. Since part of the plea agreement required 'truthful' testimony about [Henderson]'s participation, it is reasonable that the plea agreement would not be disclosed to [Henderson]'s family by McMullin.

. . . .

The [27.26] motion court ... found as fact that McMullin had informed [Henderson] of the potential conflict of interest, and that she had given her oral waiver of the same so that she could continue having contact with Cruzen while they were incarcerated in the Greene County jail. The court also found that trial counsel did not coerce, pressure, or otherwise wrongfully induce [Henderson] to waive her rights, and that there was no attempt to mislead [Henderson] in regard to the status of plea negotiations. . . .

The motion court concluded that the allegations of [Henderson], including those of ineffective assistance of counsel, were without merit, and dismissed the motion.

*Henderson v. State,* 734 S.W.2d 254, 255–57 (Mo.App.1987). After a review of the record, the Missouri Court of Appeals accepted the motion court's findings of fact and concluded not only that McMullin in-

formed Henderson of the potential conflict of interest but that she consented to dual representation.[4]  *Id.* at 258.

Henderson subsequently filed this petition for writ of habeas corpus in federal district court. After conducting an independent review of the Rule 27.26 transcript, the district court concluded that there was substantial evidence to support the finding of the motion court on each of the challenges made in the § 2254 petition.[5] The district court subsequently denied Henderson's petition for writ of habeas corpus. It is from this order that Henderson appeals. On appeal she argues that she was denied the right to effective assistance of counsel by virtue of her trial attorney's conflict of interest. Because we find that Henderson waived her right to conflict-free counsel, we need not reach the merits of Henderson's claims.

## II.

We have consistently held that the right to effective assistance of counsel may be waived, provided that waiver is knowing, voluntary and intelligent. *See United States v. Bryant,* 766 F.2d 370, 377 (8th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); *United States v. Poston,* 727 F.2d 734, 738 (8th Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); *Larry Buffalo Chief v. State of South Dakota,* 425 F.2d 271, 280 (8th Cir.1970). Once a valid waiver is found to exist, we need not inquire whether an "actual conflict of interest exists." *Bryant,* 766 F.2d at 378; *see also Larry Buffalo Chief,* 425 F.2d at 280.

---

**4.** The court also concluded that McMullin and Upp both informed her of the plea agreement proposed by the state but she refused to accept it. *Henderson v. State,* 734 S.W.2d at 258. Apparently, Henderson was adamant in her refusal to testify against her lover.

**5.** The district court credited McMullin's testimony that Henderson informed him she and Cruzen had murdered Klein. The district court found that McMullin then "advised both parties of a possible conflict; told them there would probably be a plea bargain offered and explained in great detail why there was a possibility of conflict of interest." Despite his warnings, Henderson and Cruzen "insisted that Mr.

McMullin represent both of them." The district court further noted that McMullin again discussed the possibility of conflict after their arrest and advised them to obtain separate attorneys. Furthermore, McMullin "specifically indicated a conflict if either agreed to turn state's evidence against the other." *Henderson v. Smith,* No. 88–3433, slip op. at 3 (W.D.Mo. Nov. 4, 1988).

The district court further noted that McMullin raised the conflict of interest issue on many occasions. Each time, Henderson stated that she wanted McMullin to represent both her and Cruzen, that she loved Cruzen and that they would never testify against each other. *Id.* at 4.

To establish a valid waiver, we have also consistently required the trial court to question the defendant about her waiver, advise her of the potential danger of dual representation, allow her to ask questions about the dual representation, and place the entire procedure on the record. *Bryant*, 766 F.2d at 377–78 (citing *United States v. Lawriw*, 568 F.2d 98, 105 (8th Cir.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978)). This on-the-record requirement, however, was not adopted by this circuit pursuant to any constitutional authority. Instead, it was imposed on federal district courts in this circuit pursuant to this court's supervisory authority. *See Poston*, 727 F.2d at 738 (requirements of *Lawriw* were established pursuant to supervisory powers of this court; Fed.R.Crim.P. 44(c), which requires a pretrial inquiry in all instances of joint representation in criminal proceedings, likewise applies only to federal courts).

■ A review of our cases decided since *Lawriw* demonstrates that this court has not deviated from this position. We have only imposed the standards set forth in *Lawriw* on federal district courts. *See, e.g., Bryant*, 766 F.2d at 372 (appellants convicted in federal district court on three counts of mail fraud and two counts of wire fraud); *Poston*, 727 F.2d at 736 (appellants convicted in federal district court of misapplying federally insured funds); *United States v. Cox*, 580 F.2d 317, 319 (8th Cir.1978) (appellants convicted in federal district court), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979). In *Larry Buffalo Chief*, this court reviewed on habeas the petitioner's state court conviction. Although this court found that petitioner had not exhausted his state court remedies, we noted in *dictum* that "where a possible conflict of interest is pointed out to an accused and the accused then makes an intelligent and intentional waiver, he

cannot later complain." *Larry Buffalo Chief*, 425 F.2d at 280. While *Larry Buffalo Chief* was decided before *Lawriw*, we note that the holding of *Lawriw* does not apply in situations such as the one we confront today where the waiver took place during a state court proceeding. We have never forced a state court to adhere to the *Lawriw* requirements of an on-the-record inquiry, and we are not prepared to do so today.[6] *Lawriw* is simply not required by the Constitution. Therefore, a waiver can be valid if obtained during a state trial court proceeding even if the state court does not conduct an on-the-record inquiry, provided that the waiver is knowing, voluntary, and intelligent. *See Larry Buffalo Chief*, 425 F.2d at 280; *accord Harris v. State*, 609 S.W.2d 723, 724 (Mo.App.1980) (testimony at 27.26 hearing sufficient to determine whether waiver valid); *Davis v. State*, 573 S.W.2d 736, 737 (Mo.App.1978); *cf. Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) ("nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case").

### III.

■ In determining whether Henderson's waiver was knowing, voluntary and intelligent, we note that the state court findings of fact underlying this legal conclusion are presumed correct unless one of the eight subsections of 28 U.S.C. § 2254(d) applies. *Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).[7] Henderson argues that subsection (8) applies. Subsection (8) provides that state court factual findings shall be presumed correct unless the petitioner demonstrates that the factual determinations are not fairly supported by the record examined as a whole. § 2254(d)(8).

---

6. As we will explain later, even if we were prepared to announce such a new rule today, we could not grant relief to Henderson under the principles enunciated by a plurality of the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

7. We also note that the district court findings of fact, which were the product of an independent investigation of the 27.26 transcript, are accepted unless clearly erroneous. However, because the district court's conclusions mirror the state court's conclusions, we concentrate on the state court's factual findings.

Under this standard, we cannot reject the state court's factual findings merely because we would have come to the opposite conclusion. We can only reject them if they are not fairly supported by the record. After a thorough review of the record, we hold that Henderson has failed to meet her burden of proving that the factual conclusions of the Missouri state courts are not fairly supported by the record. On more than one occasion McMullin informed Henderson of the potential conflict arising out of dual representation. On one occasion, he even suggested that she employ separate counsel in order to avoid the creation of any conflict. Henderson declined. After her arrest, McMullin informed Henderson of a plea offer which would allow her to plead guilty to first degree murder in exchange for her truthful testimony against Cruzen. In informing them about this plea offer he again explained the potential conflicts involved and indicated that if either decided to testify against the other, he would have to withdraw. Pledging their undying love, they refused to testify against one another and insisted on his joint representation. Although Henderson testified that McMullin never discussed a possible conflict of interest with her, she did admit that McMullin informed them that if a dispute arose between her and Cruzen he would have to withdraw. Henderson also testified that no plea bargain was ever communicated to her. Citing her contradictions and inconsistencies, the motion court disregarded her testimony as not credible. We have no basis to upset this credibility determination of the motion court.

Henderson argues that McMullin did not elaborate before the motion court on any specific advice or factual information which he gave to her and Cruzen explaining the full potential for a conflict of interest inherent in his representing both defendants. For example, Henderson claims McMullin did not discuss with her that plea negotiations might be affected because the evidence of guilt was stronger against her than Cruzen. The record, examined as a whole, does not support Henderson's argument. McMullin testified that after informing Henderson and Cruzen about the plea agreement offered to Henderson, he informed them about the conflict that would arise if Henderson agreed to testify against Cruzen pursuant to any plea agreement. Such a conflict, McMullin explained, would force him to withdraw from the case.

Assuming *arguendo* that Henderson is correct that McMullin did not relate every detail of the potential for conflict, we note that "a defendant need not be aware of every detail of a conflict of interest to be able effectively to waive the right." *In re Paradyne Corp.*, 803 F.2d 604, 611 (11th Cir.1986). An otherwise valid waiver is effective if the defendant " 'understands the details of his attorney's *possible* conflict and the *potential* perils of such conflict.' " *Id.* (emphasis in original) (quoting *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975)). In this case, McMullin informed Henderson and Cruzen about the potential conflicts regarding plea negotiations. Both continually informed McMullin that because of their love they would not testify against one another and therefore wanted to continue dual representation. The information provided Henderson was more than sufficient to apprise her of McMullin's possible conflict and the potential perils of such conflict. In fact, McMullin informed them both that if a dispute arose between them, he would have to withdraw.

Because Henderson makes no further attacks on the state court's findings of fact other than pursuant to subsection (8), we must presume them to be correct. Based upon these factual conclusions, we hold that Henderson knowingly, intelligently and voluntarily waived her right to conflict-free counsel. Henderson was informed of the potential dangers of dual representation on more than one occasion. After considering this potential conflict and her strong love for Cruzen, she voluntarily chose to waive her right to conflict-free counsel.

## IV.

Henderson argues that the district court's decision was incorrect, citing the

Supreme Court's recent opinion in *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Henderson argues that *Wheat* stands for the following propositions. First, there is no reason why state courts should not be under the same obligation as the federal district courts to conduct an affirmative inquiry and review wherever there is an appearance of a conflict of interest or the potential thereof in multiple representation cases.[8] Second, a valid waiver of one's sixth amendment right to conflict-free counsel can be overridden by an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. Even assuming, without deciding, that Henderson has correctly stated the holdings of the *Wheat* Court, Henderson is not entitled to relief based on these rules.

In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), a plurality of the Supreme Court announced that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.*, 109 S.Ct. at 1069; *see also Saffle v. Parks*, —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Butler v. McKellar*, —— U.S. ——, 110 S.Ct. 1212, 1216–18, 108 L.Ed.2d 347 (1990). A case announces a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* 109 S.Ct. at 1070 (emphasis in original). The plurality noted two excep-

tions to this principle: (1) the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making power to proscribe"; and (2) the new rule requires the observance of procedures implicit in the concept of ordered liberty the absence of which "implicate[s] the fundamental fairness of the trial." *Id.* at 1075–76 (citations omitted).

If we were to accept Henderson's interpretation of *Wheat*, we must necessarily conclude that it establishes new rules that impose new obligations on the states or the federal government that did not exist at the time her conviction became final in 1984. First, a rule which would require us to impose an obligation on state courts to conduct an affirmative inquiry whenever there is an appearance of a conflict of interest[9] was not dictated by precedent of this court or the Supreme Court at the time Henderson's conviction became final. In fact, this court has never required a state court to conduct a *Lawriw* inquiry. Such a rule would be a new rule under *Teague*. Second, a rule which would allow an intelligent, knowing and voluntary waiver to be overridden was not dictated by precedent of this court or the Supreme Court at the time Henderson's conviction became final. *See, e.g., Bryant*, 766 F.2d at 378. Therefore, because under Henderson's interpretation of *Wheat* new constitutional rules of criminal procedure would be established, we could not apply these rules to Henderson's case, which became final before the alleged new rules were announced.

Only if the new rules would fall into one of the two exceptions identified by the *Teague* plurality would Henderson be entitled to have them apply to her case. How-

---

**8.** Henderson also cites *United States v. Valenzuela*, 521 F.2d 414, 416 (8th Cir.1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976), and *United States v. Williams*, 429 F.2d 158, 161 (8th Cir.), *cert. denied*, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970), to support her argument that the duty of a federal court to conduct an affirmative inquiry should also be imposed upon state courts. First, we note that both cases were decided before this court even established a duty of affirmative inquiry on the federal district courts. It is therefore difficult to see how they could support

Henderson's argument. Second, both cases involve a direct appeal of a conviction from a *federal district court*. These cases do not support Henderson's argument that the *Lawriw* standard enunciated in 1977 should apply to state courts.

**9.** Because such a rule would be imposed upon a state court, it must be required by the Constitution. Neither this court nor the Supreme Court has supervisory authority over state courts.

ever, we hold that neither of the exceptions applies to Henderson's case. Neither rule places any kind of primary, private individual conduct beyond the power of the criminal law-making power to proscribe. Furthermore, neither rule requires the observance of procedures implicit in the concept of ordered liberty the absence of which implicates the fundamental fairness of the trial. An on-the-record inquiry by the trial court to ascertain whether a defendant has validly waived his right to conflict-free counsel has never been held to be implicit in the concept of ordered liberty. This court, for example, has only recently adopted this procedure in 1977. When adopting this procedure, we did not hold that it was mandated by the Constitution, but instead imposed it only upon the federal courts pursuant to our supervisory powers. *Poston*, 727 F.2d at 738. Therefore, even assuming, without deciding, Henderson's interpretation of *Wheat* is correct, it can provide her no relief. It would be establishing a new rule for which there is no exception.

Finally, Henderson cites *State v. Chandler*, 698 S.W.2d 844, 847 (Mo. banc 1985), for the proposition that the Missouri state courts have an obligation to take affirmative steps when trial counsel discloses a conflict of interest. We believe that Henderson reads *Chandler* much too broadly. First, the facts of *Chandler* are unique and therefore not helpful to Henderson's case. The court correctly characterized the facts as "bizarre." *Id.* at 846. In *Chandler*, Chandler's attorney, Anding, had been implicated in the murder for which Chandler stood trial. Chandler was also co-represented by another attorney, O'Brien, who represented not only Anding on his murder charge but also Chandler. All Chandler knew was that his brother had implicated Anding in the murder and that O'Brien also represented Anding. As a result, the record did not "justify a finding that defendant had been fully informed of, or that he understood, the potential for prejudice abiding in these facts." *Id.* at 847. It is in this bizarre context that the Missouri Supreme Court issued its holding. *Id.* ("[u]nder these ex-

ceptional facts we hold that there was no deliberate waiver of defendant's rights"). In Henderson's case, McMullin was not implicated in the murder of Klein. Furthermore, Henderson had much more information available to make an informed and intelligent decision than did Chandler. The facts are just not as egregious.

Second, the *Chandler* court noted that "[u]pon full disclosure, the trial judge *could have determined* whether defendant had waived his right to the assistance of an attorney unhindered by a conflict of interest." *Id.* (emphasis added). Such language does not establish a duty of inquiry but leaves the decision of inquiry up to the trial court. *See Davis v. State*, 573 S.W.2d at 737.

## V.

In conclusion, we hold that the Constitution is not offended when a defendant in state court is allowed to waive his sixth amendment right to conflict-free counsel without an on-the-record inquiry by the state trial court as long as the defendant knowingly, voluntarily and intelligently waives the right. Because Henderson's waiver was knowing, voluntary and intelligent, it is valid notwithstanding the lack of an on-the-record inquiry in state court. Therefore, we affirm on other grounds the order of the district court denying Henderson's petition for writ of habeas corpus.