SMITH, Circuit Judge,
with whom BYE, MELLOY, and KELLY, Circuit Judges, join,
dissenting.
I respectfully dissent. I find merit in Plunk’s contention that Moon labored under an actual conflict of interest that adversely affected his representation. See Sullivan, 446 U.S. at 348, 100 S.Ct. 1708. Because the district court failed to address whether Plunk waived the right to effective assistance of counsel in hiring Moon to represent Devries and himself, I would reverse the district court and remand with instructions to consider this issue at an evidentiary hearing. See United States v. Unger, 665 F.2d 251, 256 (8th Cir.1981).
“In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.” Sullivan, 446 U.S. at 348, 100 S.Ct. 1708 (footnote omitted). “[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.” Id. at 349-50, 100 S.Ct. 1708. A defendant must demonstrate “that his counsel actively represented conflicting interests” in order to “establish^ ] the constitutional predicate for his claim of ineffective assistance.” Id. at 350, 100 S.Ct. 1708. In this case, Moon and Prosecutor Bradford negotiated an agreement in which the State would offer a “package” plea deal to Plunk and Devries in which *770 Devries would receive ten years’ probation in exchange for Plunk serving a 99-year sentence pursuant to plea of guilty to all of the Plunk 1 and Plunk 2 offenses.[3] The State’s offer of probation to Devries was entirely contingent on Plunk’s acceptance of the State’s offer. It is undisputed that a “conflict of interest” existed at the moment that Prosecutor Bradford made the plea offer to Plunk and Devries;[4] therefore, the question is whether this conflict of interest “affected counsel’s performance.” Mickens, 535 U.S. at 171, 122 S.Ct. 1287 (“ ‘[A]n actual conflict of interest’ mean[s] precisely a conflict that affected counsel’s performance — as opposed to a mere theoretical division of loyalties.”).
“Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, ... it may well ... preclude[ ] defense counsel ... from exploring possible plea negotiations ..., provided a lesser charge or a favorable sentencing recommendation would be acceptable.” Holloway, 435 U.S. at 489-90, 98 S.Ct. 1173. “[J]oint representation of conflicting interests is inherently suspect, and ... counsel’s conflicting obligations to multiple defendants ‘effectively sea[l] his lips on crucial matters’ and make it difficult to measure the precise harm arising from counsel’s errors.” Mickens, 535 U.S. at 168, 122 S.Ct. 1237 (quoting Holloway, 435 U.S. at 489-90, 98 S.Ct. 1173) (third alteration in original).
Here, I find that the conflict of interest may have precluded Moon from negotiating a plea agreement containing a more favorable sentence to Plunk than 99 years’ imprisonment — effectively, a life sentence. See Holloway, 435 U.S. at 490, 98 S.Ct. 1173. Prosecutor Bradford’s testimony demonstrates that he would have been open to a more “favorable sentencing recommendation.” See id. Prosecutor Bradford testified that, prior to trial, Moon indicated to Prosecutor Bradford “that he had ... tried to discuss the terms of the [package] plea offer with Mr. Plunk, ... but ... was having some difficulty ... getting Mr. Plunk to understand what he was trying to explain to him. One minute [Plunk] seemed to understand. The next minute, he did not.” App. 562. According to Prosecutor Bradford, because Moon was *771 “concern[ed] about the way Mr. Plunk was interacting with him when he was trying to explain things to him[,] he felt the need to request a forensic examination.” Id. Subsequently, Plunk underwent a forensic evaluation, which ultimately found him competent.
During the evidentiary hearing, Plunk’s counsel asked Prosecutor Bradford whether he would ever consider “offer[ing] a reduced sentence to a defendant on the basis of something that comes out of a forensic evaluation,” even if the evaluation concludes that the defendant is nonetheless competent to stand trial. Id. at 564. Plunk’s counsel reminded Prosecutor Bradford about his prior deposition testimony, and the following exchange occurred:
[Plunk’s counsel:] And I asked you on line 15: What about something about the defendant, like diminished capacity, you know, like mental health, physical health, something like that?
A. [by Prosecutor Bradford] My response was: Yeah, sometimes I would say that if the forensic report comes back and they are — they are fit to proceed, they are competent, but there is some extenuating circumstance, perhaps their IQ is borderline, if there’s something there, I am willing to consider that.
Q. So your testimony at your deposition is that you would be willing to consider- — -
A. Yes. I’m always open to listen to just about anything that the defense wants to present, or something in the forensic report they want me to take a second look at, I’m willing to do that.
Id. at 565-66 (emphases added). But Prosecutor Bradford did not recall Moon presenting him with such mitigating evidence in Plunk’s case. Id. at 566.[5]
Prosecutor Bradford also testified that although Moon never approached him about Plunk providing information about his suppliers to investigators, it was “always a possibility” that “Plunk would have received less prison time” had Moon approached Prosecutor Bradford about Plunk’s cooperation in the investigation. Id. at 571-72.
This is not a case in which the prosecutor “flat[ly] refus[ed] to engage in plea bargaining.” Burger, 488 U.S. at 786, 107 S.Ct. 8114 (quotation and citation omitted). Instead, the record evidence cited above shows that Prosecutor Bradford “would have been receptive to a plea bargain” containing a more favorable sentence based on mitigating evidence and cooperation, had Moon presented such evidence. Cf. Burger, 483 U.S. at 785, 107 S.Ct. 3114 (“The notion that the prosecutor would have been receptive to a plea bargain is completely unsupported in the record.”).
Despite record evidence that Prosecutor Bradford was willing to entertain a more favorable sentence to Plunk than 99 years’ imprisonment, the majority concludes that “Moon’s representation of Devries did not adversely affect his negotiations on behalf of Plunk, because Plunk was unwilling to plead guilty to attempted murder, and the State was unwilling to forego that charge.” Part H.A., supra. In support of its conclusion, the majority cites Prosecutor Bradford’s testimony that the State was *772 unwilling to forego the attempted-murder charge and that “the inability to reach an agreement on the attempted murder charge ‘was ultimately what led to us having to try the case.’ ” Id. (citing App. 560). It also cites Moon’s testimony that Plunk did not think “that the attempted capital murder charge was justified” and that the “attempted capital murder charge was the most important [charge] to [Plunk].” App. 442. However, the majority omits Prosecutor Bradford’s additional testimony about why the State and Plunk were unable to reach a plea agreement — Plunk’s difficulty understanding the terms of the proposed plea agreement. App. 562. During the evidentiary hearing, Plunk’s counsel asked Prosecutor Bradford, “So at that time, when Mr. Moon was willing to take [the “package” plea deal] to his clients, why did that not result in a disposition at that time?” As discussed previously, Prosecutor Bradford responded that Moon “was having some difficulty ... getting Mr. Plunk to understand what he was trying to explain to him,” which resulted in the competency hearing. Id.
Plunk need not show that a more favorable plea agreement would have been entered absent the conflict; instead, to prove that Moon’s conflict of interest prevented him from seeking a better plea agreement for Plunk alone, he need show only that “a lesser charge or a favorable sentencing recommendation would be acceptable” to the prosecution. Holloway, 435 U.S. at 489-90, 98 S.Ct. 1173. Plunk has met this burden based on Prosecutor Bradford’s testimony. Furthermore, even if the true reason for the failure to reach a plea agreement was the State’s insistence on an attempted-murder conviction and Plunk’s refusal to plead guilty to that offense, a competent attorney not laboring under a conflict of interest would have pursued a deal containing a more favorable sentence to his client, even if it included the objeet-ed-to charge. Plunk was presented only with a plea deal containing (1) an unfavorable term — pleading to attempted murder— and (2) an unfavorable sentence — a 99-year sentence pursuant to a plea of guilty to all of the Plunk 1 and Plunk 2 offenses (effectively, a life sentence). Despite the State’s refusal to negotiate on the attempted-murder charge, Moon could have proposed an agreement in which Plunk pleaded guilty to the attempted-murder charge but did not receive a life sentence. When presented with a more favorable sentencing term, Plunk may no longer have been at “loggerheads” with the State over the attempted-murder charge.
In finding that no actual conflict of interest existed, the district court did not address whether Plunk waived the right to effective assistance of counsel in hiring Moon to represent Devries and himself.
We have consistently held that the right to effective assistance of counsel may be waived, provided that waiver is knowing, voluntary and intelligent. See United States v. Bryant, 766 F.2d 370, 377 (8th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); United States v. Poston, 727 F.2d 734, 738 (8th Cir.), cert. denied, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); Larry Buffalo Chief v. State of South Dakota, 425 F.2d 271, 280 (8th Cir.1970). Once a valid waiver is found to exist, we need not inquire whether an “actual conflict of interest exists.” Bryant, 766 F.2d at 378; see also Larry Buffalo Chief, 425 F.2d at 280.
Therefore, a waiver can be valid if obtained during a state trial court proceeding even if the state court does not conduct an on-the-record inquiry, provided that the waiver is knowing, voluntary, and intelligent. See Larry Buffalo *773 Chief, 425 F.2d at 280; accord Harris v. State, 609 S.W.2d 723, 724 (Mo.App. 1980) (testimony at 27.26 hearing sufficient to determine whether waiver valid); Davis v. State, 573 S.W.2d 736, 737 (Mo.App.1978); cf. Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) (“nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case”).
Henderson v. Smith, 903 F.2d 534, 536-37 (8th Cir.1990). “[I] cannot discern from this record ... whether, in fact, such a waiver was made. [I], therefore, [would] direct the district court to consider this issue at [an] evidentiary hearing” on remand.[6] Unger, 665 F.2d at 256.
On this record, I conclude that the district court erred[7] in finding that “negotiations [of a package plea deal] did not adversely affect [Plunk’s] defense.” Plunk, 2011 WL 6963092, at *21. Accordingly, I would reverse and remand for further proceedings, which would include an eviden-tiary hearing on the issue of waiver.

. In April 2006, authorities charged Plunk in Boone County Circuit Court Case No. CR 2006-129-3 {"Plunk 1 ”) with the following offenses: (1) possession of methamphetamine with intent to deliver; (2) simultaneous possession of drugs and firearms; (3) being a felon in possession of a firearm; (4) fleeing in a vehicle; (5) three counts of criminal mischief (damage to police vehicles); (6) possession of drug paraphernalia; (7) aggravated assault; (8) possession of marijuana; and (9) being subject to a sentencing enhancement due to a prior drug-related conviction.
In August 2006, while out on bond, police arrested Plunk during his attempt to deliver methamphetamine to an undercover police officer. Officers discovered 34.4 grams of methamphetamine in Plunk's socks. In Plunk’s car they discovered 338.9 grams of methamphetamine, a glass pipe, digital scales, and plastic baggies. Plunk was subsequently charged in Boone County Circuit Court Case No. CR 2006-213-3 {"Plunk 2 ”) with the following: (1) criminal attempt to commit capital murder; (2) possession of methamphetamine (a total of 373.3 grams) with intent to deliver; (3) attempt to deliver methamphetamine; (4) possession of drug paraphernalia; and (5) being subject to sentencing enhancement due to prior convictions.

. At oral argument, I asked the State's counsel whether counsel agreed that Moon's recommendation to Plunk to accept the plea deal that was beneficial and favorable to Devries created an actual conflict of interest. While the State’s counsel responded that she was unsure whether Moon actually gave such advice to Plunk, she “assume[d] that to be true” "[f]or the sake of [the State's] argument.” She agreed that such advice would create a conflict of interest.

. During the State’s cross-examination of Prosecutor Bradford, he indicated that he "didn’t see anything in the cases that [he] would consider to be mitigating.” Id. at 580. During redirect examination, Prosecutor Bradford reaffirmed that, in addition to seeing nothing mitigating in the forensic report, Moon never provided him with any mitigating evidence. Id. at 591.

. The record does contain some relevant testimony. For example, Robert Hall is an inmate who assists other inmates with their legal work. Hall helped Plunk to file his initial habeas petition. Hall testified to statements that Plunk made to him while they were incarcerated together. Hall testified on direct examination as follows:
Q Mr. Hall, ... when you said you reviewed Mr. Plunk's papers, ... you thought that he had some claims to raise?
A Yes, ma’am.
Q And what was that?
A Well, when I found this drug task force report and I asked Terry who she was and I asked him had he ever heard of a conflict of interest and he said no, he didn't know what that was. And I said, Well, it’s when two defendants have — when two people have an antagonistic defense. And he didn’t know what that was either, and so I said, You sure you never heard your attorney talk about a conflict of interest while y’all were in trial at any time. He says, No, I'm almost positive I’ve never heard that word. So I sat down and explained to Terry about the conflict of interest.
Terry had told me that he had paid Moon to represent Ms. Devries also. And that Moon, Attorney Moon, had represented both of them on the case. And then I explained, of course, to Terry that he couldn’t represent both of them because of what had happened, there was a conflict of interest, and, of course, over and over and over I had to tell him several, several times. Q Why did it take so long do you think? Why did you have to tell him several times? A He doesn’t grasp legal or arguments. He doesn't understand or he didn’t understand the significance of everything I was trying to explain to him.
Furthermore, Plunk testified that he met Moon through his son and his son's ex-wife while he was in jail in Missouri. Then, he testified under direct examination as follows:
Q Did [Devries] ever get a lawyer?
A I helped her get a lawyer.
Q Okay. And who was her lawyer?
A Phillip Moon.
Q Okay. And when you hired Phillip Moon for you and Deb, did he say anything to you that it might be a problem for him to represent both of you?
A No.
Q And who paid Phillip Moon?
A Me.

. Because of the result that I reach as to Plunk’s conflict-of-interest argument, I would not address his additional claims of ineffectiveness. See Part II.B-D., supra.